THE NAUGATUCK WATER COMPANY *vs.* ALFRED J. NICHOLS.

Hartford Dist, Oct. T., 1889. ANDREWS, C. J., CARPENTER, PARDEE, LOOMIS and FENN, Js.

58  403
72  664

The charter of a corporation organized for the purpose of supplying a town with water, contained the following provision:—" Twenty-five per cent of the capital stock shall be paid in before said company can exercise the privileges and powers herein granted." The subscription for the stock, after stating the granting of the charter, ran as follows:—" We the subscribers hereby accept the aforesaid grant and associate ourselves as a body corporate thereunder, upon the terms and under the conditions and limitations in said resolution contained; and further, we do hereby agree to take the number of shares of the capital stock set opposite our respective names and to pay for the same as it may be called in by the directors." The defendant subscribed the paper, taking twenty shares. Before twenty-five per cent of the capital had been paid in on the subscription to the stock, the company, assuming to act as a corporation, made a contract with a third person to construct its water-works. Held that the defendant was not discharged from liability on his subscription by reason of this act of the company. This act was not *ultra vires*, as it fell within the powers granted to the corporation when perfected; but as the corporation was not perfected it had no power to act as such, and its action was void.

[Argued October 1st, 1889—decided March 3d, 1890.]

ACTION upon a subscription to the capital stock of the plaintiff corporation; brought to the District Court of

Waterbury, and heard before *Bradstreet, J.* Facts found and judgment rendered for the plaintiff, and appeal by the defendant. The case is fully stated in the opinion.

*M. W. Seymour* and *H. H. Knapp*, for the appellant.

The defendant has been discharged from his liability upon his subscription by the company's making the contract for the construction of its water-works before twenty-five per cent of its capital had been paid in, as required by its charter.

1. There are always certain conditions precedent to the liability upon a subscription to the stock of a company which are implied, and these vary according to the variance in charters. The following have been decided by the courts to be included in such category. The whole amount of the capital stock must be subscribed. Thompson on Liability of Stockholders, 135; 1 Morawetz on Corp., 140; *Salem Milldam Corp.* v. *Ropes,* 9 Pick., 187; *Cabot & W. Springfield Bridge Co.* v. *Chapin,* 6 Cush., 50; *Worcester & Nashua R. R. Co.* v. *Hinds,* 8 id., 110; *Stoneham Branch R. R. Co.* v. *Gould,* 2 Gray, 277; *Boston, Barre & Gardner R. R. Co.* v. *Wellington,* 113 Mass., 79; *N. Hamp. Central R. R. Co.* v. *Johnson,* 30 N. Hamp., 390; *Contocook Valley R. R. Co.* v. *Barker,* 32 id., 363; *Oldtown & Lincoln R. R. Co.* v. *Veazie,* 39 Maine, 572; *Hunt* v. *K. & M. Bridge Co.,* 11 Kan., 440. So capital stock must be subscribed for in good faith and absolutely. 1 Morawetz on Corp., 143. So a call must be made by the proper persons. 1 Morawetz on Corp., 144. Where the corporation has the authority to begin business or exercise its privileges on a certain amount of stock subscribed or paid in, the subscription becomes binding when the prescribed amounts have been reached. *Lexington & W. Cambridge R. R. Co.* v. *Chandler,* 13 Met., 311; *Boston, Barre & Gardner R. R. Co.* v. *Wellington,* 113 Mass., 79; *White Mountains R. R. Co.* v. *Eastman,* 34 N. Hamp., 24. This case (without reference to the agreement) comes clearly within the latter class. The charter provided that twenty-five per cent of the capital should be paid in before the

company could exercise the privileges and powers therein conferred. It did undertake to exercise these privileges and powers by making a contract for the construction of its water-works before the percentage of its capital was paid in. Every subscription to the stock of a corporation, no matter how formal or informal, by implication incorporates the terms of the charter of the proposed company; and every subscriber agrees to become associated with the others only upon condition that the formalities of the charter shall be observed. 1 Morawetz on Corp., 66, 136; *Indianapolis Furnace & Mining Co.* v. *Herkimer*, 46 Ind., 142.

2. But we are not obliged to rely upon implication in this matter. The plaintiff brings its suit upon a certain contract in writing, which it sets forth. By virtue of this contract it claims the defendant to be liable. It must recover, if at all, upon this. The contract, after stating the fact of the granting of the charter, and that it "is hereby made part of this instrument of our organization thereunder and acceptance of our grant and franchise," proceeds as follows :—" Now, therefore, we, the subscribers, within two years after the passage of said resolution by the General Assembly, do hereby accept the aforesaid grant and franchise, and do associate ourselves as a body politic and corporate thereunder, upon the terms and under the conditions and limitations in said resolution contained, under the style and name of The Naugatuck Water Company as aforesaid; and further, we, the subscribers, do hereby agree to take the number of shares of capital stock of said corporation set opposite our respective names, and to pay for the same as it may be called in by the directors." A glance at this instrument discloses that all the conditions and limitations set forth and required by the charter of this company were in express terms made a part of the contract of subscription. The defendant's subscription was, therefore, upon the conditions named in the charter. From the law, as above stated, it would appear that for his protection in reference to the matter in question it was unnecessary thus to refer to the charter. By implication it was referred to.

But the incorporators in this case went further, and, in obtaining the subscriptions of the different individuals, set forth that they were asked to enter into a company of a certain kind, and that their subscriptions were dependent upon the performance of the provisions of a certain charter. There can be no doubt that such an agreement was valid. It might have been an unconditional agreement in terms, and yet in that case the law would have implied the·condition we insist upon, and if valid, as the authorities above cited would show it to be, how much more when the subscription was in terms conditional. It follows then as a necessary conclusion that the plaintiff, in order to recover, must have been able to show that all the conditions precedent to the subscribers' liability have been performed. It saw fit, without the defendant's consent, to ignore the conditions in this case, and precluded itself thereby from recovering. Its very complaint shows that it considers that it had agreed to perform certain conditions, for it alleges that it has duly performed all the conditions thereof on its part. Such an allegation was necessary or the complaint would have been demurrable, and the same must be proved or it fails to make out its case. It alleged that it had performed; the defendant denied it. The court finds that it had not, and how then can it establish any legal claim against this defendant? 1 Morawetz on Corp., 158; *Penobscot & Kennebec R. R. Co.* v. *Dunn,* 39 Maine, 587; *Troy & Greenfield R. R. Co.* v. *Newton,* 8 Gray, 596; *Penobscot & Kennebec R. R. Co.* v. *Whittier,* 12 id., 244; *Katama Land Co.* v. *Holley,* 129 Mass., 541; *N. Hamp. Central R. R. Co.* v. *Johnson,* 30 N. Hamp., 390.

*H. C. Baldwin,* for the appellee.

ANDREWS, C. J. The plaintiff is a corporation created by a special act of the General Assembly passed at its January session, 1887, "for the purpose of supplying the town of Naugatuck with a supply of pure water for domestic and other uses." The charter is found in the special acts of that session at page 571. It grants to the corporation the

privilege to take springs of water, to make dams for reservoirs, to construct aqueducts in any of the streets, to enter upon land, and to collect rents, and empowers it to borrow money, to give mortgages, to make contracts, and to do very many other things thought to be necessary or convenient to enable it to carry out the purpose of its creation. In addition to these things the charter provides that "twenty-five per cent of the capital stock shall be paid in before said company can exercise the privileges and powers herein granted."

Within the time limited by law the corporators named in the charter, and certain other persons associated with them, one of whom was the defendant, met, voted to accept the charter, chose directors and other officers, enacted by-laws, and organized themselves into a corporation under and pursuant to it. The defendant subscribed for twenty shares of the capital stock, of which the par value was twenty-five dollars a share. On the 25th day of July, 1888, the directors voted to call for, and issued a call for, an instalment of twenty-five per cent of the stock, to be payable on or before the 20th day of August then next. Of this call the defendant received due notice, but has at all times neglected and refused to pay it. On the 15th day of July, 1888, the plaintiff entered into a verbal contract with one Snow to construct for it its water-works. This contract was put into writing on the first day of August, and it was on that day executed by the parties. By the terms of that contract the plaintiff agreed to pay, and has since paid to Snow, over $17,000 for work done by him. The whole of the twenty-five per cent was not paid in until after the said first day of August.

The trial court rendered judgment for the plaintiff to recover the instalment. The defendant has appealed. The substance of his reasons of appeal is, that he is absolved from his promise to pay for the stock for which he subscribed because the plaintiff undertook to contract with Snow for the construction of its water-works before the whole of the twenty-five per cent had been paid in.

, In the formation of a private civil corporation there are two classes of contracts to be considered. One is the contracts which the corporators or promoters make each with all the others in order to bring the corporation into existence, of which a subscription to the capital stock is an example, and which necessarily antedate its completed existence. These are the organizing contracts. The other class is the contracts which the corporation itself, after it comes into a complete existence, makes with third persons. Both these classes of contracts depend upon the provisions of the charter; and it is usual that the charter of every corporation contains provisions relating to each. The organizing contracts are made primarily by each of the subscribers with each of the others. They are also in a sense made with the corporation. But the making them is not an exercise of any of the powers or privileges granted to the corporation, because they are the steps necessary to be taken before the corporation is qualified to exercise any of the powers or privileges granted to it. It needs hardly to be said that there must be a full compliance with all the charter provisions relating to the organizing contracts before the corporation comes into such a legal existence as to be able to make contracts with third persons at all. Until these preliminary steps have been taken there is no legal person in being capable of exercising any power or privilege whatever.

It is obvious enough that any omission or failure to complete the organization would affect any contract with a third person. How any premature contract with a third person could interrupt or hinder the organization is not so plain. If any organizing contract was by its terms conditioned that no such contract should be entered into, or if it was so made conditional by the provisions of the charter, then it would appear.

The contract of subscription signed by the defendant is not by its terms conditioned upon anything relating to contracts which the plaintiff might make with third persons, unless the reference in it to the charter puts it in such a condition. If then the charter of the plaintiff contains no

provision making a subscription to its capital stock depend-ent for its validity upon the time when the company might enter into contracts with third persons, then there is no such condition in this case. There certainly is no express condition in the charter to that effect. The defendant claims that the provision of the charter above quoted is such a condition by implication, because it forbids the plaintiff to exercise any of the granted privileges and pow-ers until the required part of the capital stock should be paid in. It does not seem to us that this claim can be sus-tained. Some of the powers and privileges granted to the plaintiff in its charter are hereinbefore enumerated. Pro-hibiting the exercise of any of these is quite a different thing from discharging a subscriber from the payment for his stock. The contract with Snow is foreign to the de-fendant's subscription contract. It purports, indeed, to have been made by the corporation; but in law it was not and could not have been, as at that time the corporation had no power to make it. It is not, however, a case of *ultra vires*. A case of *ultra vires* is where a fully existing corpo-ration attempts to act upon some subject matter not within its charter powers. In this case the subject matter was within the powers conferred by the charter, but the corpo-ration was not qualified to exercise those powers. Hence the executory contract, so far as the corporation was concerned, was inoperative. It was as though it had not been. In a case of *ultra vires* a corporation may become bound by the principles of estoppel. In this case it could only be bound by subsequent transactions from which a contract might be implied. Snow the contractor might, perhaps, have looked through the corporation and held those who assumed to act for it and in its name without authority liable as individuals. Beyond this we cannot see that any effect can be given to it as an executory contract.

The argument made on behalf of the defendant admits that his subscription was valid and lawful except for the contract with Snow. The provision of the charter clearly forbade such a contract. Being forbidden it was void. Can

it be so that a void contract with Snow will release the defendant from his lawful one? If the defendant is not bound on his subscription then none of the subscribers are. All or none are bound. It cannot be that those who paid promptly are holden and the defendant who refused to pay is released. If all are released the consequence is that those who paid one instalment can be compelled to pay no more; on the contrary, it would seem that they ought to have the amount refunded to them, otherwise they would be in a worse condition than those who refused to pay. The inevitable result of the defendant's claim, if granted, would be disaster complete and overwhelming to the enterprise.

The provision of the charter under consideration forbids the exercise of any granted power until the instalment was paid in. A careful regard for the public interest might naturally prompt the legislature to enact such a prohibition, while nothing but an injury done or threatened to the subscriber would be likely to suggest relieving him from making payment. Between these two things there is no legal connection. The relation of cause and effect does not exist. Neither implies the other. Either may well stand without the other, as either might be omitted without affecting the other.

It must not be inferred that we regard the provision of the charter as in the interest of the public alone; nor for the benefit merely of third persons. We entertain no doubt that it was designed to protect the stockholder as well. If the premature exercise of any granted power operated to the injury of any subscriber he ought not to be held to pay. But, on the other hand, if it was an advantage to him, and if it also tended to promote the purposes for which the corporation was chartered, it would be very unreasonable that he should not pay according to his promise. When any subscriber really suffers from such cause a remedy will not be wanting.

We think a compliance with this provision is not a condition precedent to the right of the plaintiff to recover in

this action; and that a disobedience to it does not operate to release the defendant from his promise.

In this opinion CARPENTER and FENN, Js., concurred.

PARDEE, J., (dissenting.)   It is provided in the plaintiff's charter that "twenty-five per cent of the capital stock shall be paid in before said company can exercise the privileges and powers herein conferred."   This provision, therefore, of legal necessity is written as a condition precedent in every subscription made to the capital stock.   Indeed, each subscription was expressly made "upon the terms and under the conditions and limitations" imposed by the charter. Each subscriber secured whatever measure of protection there may be in it to himself.   All other subscribers combining cannot deprive him of it.   The law of the plaintiff's being requires the subscription of the capital stock, the organization, the call for, and the actual payment into its treasury of one quarter of the capital, prior to the making of contracts for the construction of its water-works. But this law was disregarded.   The organized corporation, not having either called for or received a dollar from the subscriptions to its capital, entered into a contract for the construction of its works.   It was the privilege of the defendant to annex to his subscription the condition that he would not become a member of the corporation if it should do that thing.

It is not an answer to his defense to say that all other subscribers have waived the violation of the charter, have paid, and have ratified the contract.   Each of them could waive or ratify for himself; no one, nor all of them, could waive or ratify for him.   Nor to say that in this case the contract was an advantageous one and therefore neither the corporation, nor the defendant suffered any pecuniary injury.   The latter is not to be made to bear the burden of proving that he was not injured.   The question is one of construction of a contract.   What condition did the defendant annex to his subscription?   Has the plaintiff so far met

the condition as to be entitled to enforce the contract of subscription? Indeed the question is far reaching; it is, in reality, whether it is possible in making a contract of subscription to the capital of a corporation to impose thereon any condition which will protect the subscribers from an absolute liability.

In this opinion LOOMIS, J., concurred.

NOTE.—The document signed by the subscribers to the stock of the plaintiff company, in the foregoing case, was as follows:—

"Whereas, the General Assembly of the state of Connecticut did at its January session, A. D. 1887, by resolution approved the 19th day of May, 1887, incorporate the following persons, to wit: Bronson B. Tuttle, F. W. Tolles, E. H. Carrington, L. P. Beardsley, Wm. Ward, Amos Culver, Jno. H. Whittemore, Homer Twitchell, L. D. Warner, Geo. A. Lewis and F. B. Tuttle, all of the town of Naugatuck in New Haven County, with all such persons as might thereafter associate with them, their successors and assigns, as a body corporate, for the purpose of supplying the town of Naugatuck with a supply of pure water for public and domestic and other uses, under the name and style of The Naugatuck Water Company, subject to the conditions and provisions of said act of incorporation, which is hereby made part of this instrument of our organization thereunder and acceptance of said grant and franchise:—Now therefore, we the subscribers, within two years after the passage of said resolution by the General Assembly aforesaid, do hereby accept the aforesaid grant and franchise, and do associate ourselves as a body politic and corporate thereunder, upon the terms and under the conditions and limitations in said resolution contained, under the style and name of The Naugatuck Water Company as aforesaid; and further, we the subscribers do hereby agree to take the number of shares of the capital stock of said corporation set opposite our respective names, and to pay for the same as it may be called in by the directors. Dated at Naugatuck, Conn., this 23d day of May, 1888."