Syllabus.

THE MANISTEE LUMBER COMPANY *et al.*

*v.*

THE UNION NATIONAL BANK OF CHICAGO.

*Filed at Ottawa October 31, 1892.*

1. CONTRACT—*performance, when dependent upon some prior act.* It is a good defense to an action on a contract that the performance of the act required was dependent upon some other thing which the other party was to do and has failed to do; and if, before the one party has done anything, it is ascertained that the other party will not be able to do that which he has undertaken to do, this will be a sufficient reason why the first party shall do nothing.

2. SAME—*mutual and concurrent undertakings.* Where an agreement requires the acts of both parties to be done at the same time, one is not obliged to perform his part before the other; and the word "tender," as applied to cases of mutual and concurrent promises, means readiness and willingness to perform provided the other party is ready and willing to perform.

3. SAME—*construed.* A written agreement was entered into between a bank, party of the first part, two lumber companies, parties of the second part, and W. & B., parties of the third part, by which the party of the first part assigned its claim of $39,000 on an insolvent corporation, then in the hands of a receiver, to one of the parties of the second part for $11,700 paid down, upon the consideration and express conditions that the parties of the second and third parts, should proceed without delay, to purchase the property and assests of the insolvent corporation, and to form a new corporation with a paid-up capital not exceeding the actual cost, and to transfer to it the title to such property and assets, or cause the same to be done, and by which agreement the bank should be entitled to receive on the organization of such new company, upon tender to either the second or third parties of the said sum of $11,700 cash "on or before the first day of May, 1889," the fully paid capital stock of said company, to the extent and in the ratio that that sum should bear to the aggregate cost of such property and assets. It was provided in such agreement that should the parties of the second and third parts fail to acquire said property and assets, they were to pay to the first party the share of the dividends to which the claim assigned should be entitled : *Held*, that the words "on or before the first day of May, 1889," qualified the verb "receive" as well as the noun "tender," so that the bank was not only to tender the money on or before that day, but was also to receive the stock on or before

that day,—in other words, it was intended that the tender of the money and the receipt of the stock should be concurrent acts.

4. In such case, where the parties of the second and third parts were, on May 1, 1889, unable to deliver the stock, and had not taken any steps to organize the new corporation, the failure of the bank to tender the $11,700 on or before that day did not release the other parties from their liability under the contract.

5. SAME—*failure of consideration.* It also appeared in the case that the sale of the property and assets of the insolvent corporation could not take place before June 28, 1889, and that the bank was willing to waive the failure of the other parties to organize the new corporation as early as May 1, 1889, and to pay the $11,700 in exchange for stock, as late as June 28, 1889 ; and it further appeared by a letter written July 1, 1889, that such other parties, on the assumption that the failure of the bank to make a formal tender before May 1, 1889, released them from their agreement to transfer stock, refused to deliver the same at any time : *Held,* that when such parties denied their liability to deliver the stock at any time, the consideration on which the assignment was made failed, and it was without consideration, and an action then arose in favor of the bank to recover the dividends upon its claim, which such other parties had collected from the receiver, as so much money had and received to its use.

6. But, independently of this liability under the common counts, such second and third parties receiving dividends on such claim became, by their express undertaking, liable to pay over to the bank such dividends, less the $11,700 in their hands. The words "fail to acquire such property and assets," should be construed in connection with all the other phraseology of the agreement, and when so construed evidently mean a failure to acquire as the property of the proposed corporation, whose stock was to be delivered to the bank.

7. PRACTICE—*judgment by Appellate Court, on reversal.* Where a trial is had, by agreement, before the court without a jury, resulting in a judgment for the defendant, the Appellate Court may not only reverse, but may also render judgment for the plaintiff, if the law, as applied to the facts found by that court, necessitates such a judgment, and it can be ascertained from the facts so found what judgment ought to have been rendered by the court below.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. ELLIOTT ANTHONY, Judge, presiding.

This is an action of assumpsit, begun on January 3, 1890, in the Superior Court of Cook County, by the Union National Bank of Chicago against The Manistee Lumber Company, The State Lumber Company of Michigan, William Wente and R. R. Blacker. The declaration as originally filed consisted of the common counts only, including the counts for money lent and advanced by the plaintiff to the defendants, and for money paid, laid out and expended by the plaintiff for defendants, and for money had and received by the defendants to and for the use of the plaintiff, to which defendants pleaded the general issue. Afterwards, by leave of court, plaintiff filed two additional counts, in the first of which it is averred, that, on March 7, 1889, the Manistee Salt and Lumber Company, a Michigan corporation, owed plaintiff $39,000.00; that said corporation was insolvent on said day, and its property and effects had been placed in the hands of receivers, who were to wind up its affairs, and convert its assets into money for distribution among its creditors; that, on that day, the plaintiff and defendants entered into the written agreement hereinafter set forth; that plaintiff assigned its claim against said corporation to the defendant, the Manistee Lumber Co., as provided in said agreement; that defendants did not organize a corporation, or procure said assets to be conveyed to it, whereby plaintiff lost the opportunity of acquiring the stock therein, and the consideration of the transfer of its claim to the defendants failed, and it was entitled to receive the dividends due upon its said claim out of said assets; that the defendants, although said dividends amounting to the sum of, towit: $20,000,00, were paid to them by said receivers, did not pay the same or any part thereof to plaintiff. The second count alleges further, that defendants did not acquire all the assets of said corporation, but that a part thereof were sold to other parties, etc., and that defendants became liable to pay said dividends to plaintiff, etc. The plea of non-assumpsit was filed to the additional counts.

By agreement of parties a jury was waived, and the cause was submitted to the court for trial without a jury.   The plaintiff submitted to the court four written propositions to be held as law, three of which were refused.   The first of the propositions so refused is as follows :

"The court holds as a proposition of law applicable to this case, that the purchase of the property and assets of the Manistee Salt and Lumber Company by the defendants, the formation by them of a new corporation capitalized at an amount not exceeding the cost of said property and assets, and the transfer to such new corporation of the title to said property and assets, were conditions precedent to any obligation on the part of the plaintiff to tender to either of the parties of the second or third parts the sum of $11,700 for the preservation of any of its rights under said contract."

The trial court decided the case against the plaintiff and rendered judgment in favor of the defendants.   Upon appeal to the Appellate Court, the latter court reversed the judgment of the Superior Court, and entered judgment in favor of the Bank, the appellant there, and against the defendants below, the appellees there.   The present appeal is prosecuted by the defendants below, who are appellants here, from the judgment of the Appellate Court in favor of the Bank, the appellee here. The judgment of the Appellate Court, which recites the facts as found by it, is as follows :

"The court, having examined the transcript of the record of the court below, and considered the errors assigned, and the arguments of the respective parties, finds from the evidence contained in the record the following facts:   That on March 7, 1889, the appellant, the Union National Bank of Chicago, was a creditor of the Manistee Salt and Lumber Company, to the amount of thirty-nine thousand ($39,000) dollars ; that said Manistee Salt and Lumber Company was, at that time, insolvent, and its property and assets were in the hands of receivers appointed by the circuit court of Man-

istee county, Michigan, and the claim of appellant had been duly proved with said receivers, and was entitled to share in whatever dividends should be paid from said estate; that the appellees were, at that time, engaged in forming a syndicate to purchase the property and assets of said Manistee Salt and Lumber Company, at a receiver's sale which was then about to be made, and for that purpose desired to acquire the aforesaid claim of said appellant; that thereupon, on March 7, 1889, the parties entered into the written contract of that date which is set forth in the declaration and in the bill of exceptions herein, which agreement was as follows:

" 'This agreement, made this 7th day of March, A. D. 1889, between the Union National Bank of Chicago, as party of the first part, the Manistee Lumber Company and the State Lumber Company of Michigan, as parties of the second part, and William Wente and R. R. Blacker, as parties of the third part, witnesseth:

" 'Whereas, the parties of the third part, in connection with other parties and corporations, are engaged in forming a syndicate for purchasing the property and assets of the Manistee Salt and Lumber Company of Manistee, Michigan, (insolvent,) and forming a corporation to receive the title thereto, said corporation to be capitalized at an amount not exceeding the actual cost to said syndicate of said property and assets, and for the purpose above stated the said third parties are desirous of acquiring the claims against said Manistee Salt and Lumber Company now owned by the party of the first part, amounting, at the par value thereof, to the sum of $39,000:

" 'Now, in consideration of the premises, and the sum of eleven thousand seven hundred dollars ($11,700) to it in hand paid by the parties of the third part, the receipt whereof is hereby acknowledged, the party of the first part hereby agrees to forthwith assign and transfer its said claim to the said Manistee Lumber Company, one of the parties of the second part hereto, reserving, however, all benefit of any and all col-

laterals, endorsements or other securities held by the party of the first part in connection with said claim: *Provided, however,* that this agreement is upon the express consideration and condition that the parties of the second and third parts hereto shall proceed without delay to purchase the said property and assets of the said Manistee Salt and Lumber Company, and to form the said corporation with a paid-up capital as above stated, and transfer to said company the title to said property and assets, or cause the same to be done; and said bank shall be entitled to receive, upon the organization of said company and upon a tender to [it] either the second or third parties of said sum of $11,700 cash on or before the first day of May, 1889, the fully paid capital stock of said company, to the extent and in the ratio that said $11,700 shall bear to the aggregate cost of said property and assets to said syndicate, but said amount of stock so to be received by said first party shall in no event be less at its par value than $11,700. The parties of the second and third parts severally further agree that the said stock so to be received by said bank, at its election, shall be given a representative on the board of directors of the said new corporation, to be designated by the first party hereto.

" 'Should said parties of the second and third parts fail to acquire said property and assets, they hereby further agree to pay to said party of the first part the share of any dividends to which the claims hereby agreed to be transferred and assigned shall be entitled *pro rata*.

" 'Witness the hands and seals of said parties, the day and year first above written.

> UNION NAT. BANK OF CHICAGO, (Seal.)
>     By J. J. P. ODELL, *V. P.*
> MANISTEE LUMBER Co.,    (Seal.)
>     WM. WENTE, *Sec.*
> WILLIAM WENTE,    (Seal.)
> STATE LUMBER Co.,    (Seal.)
>     R. R. BLACKER, *Sec.*
> R. R. BLACKER.    (Seal.)'

"That the sum of eleven thousand seven hundred ($11,700) dollars mentioned in said contract was on that day paid by appellees to appellant, and the said claim of appellant duly assigned and transferred to said Manistee Lumber Company, in accordance with said contract; that the appellees did not, prior to May 1, 1889, proceed to purchase the property and assets of said Manistee Salt and Lumber Company or to form a corporation to receive the title thereto, as provided in said contract, nor did they acquire any of said property until June 18, 1889, and then did not purchase or acquire all of said property and assets, but upwards of $25,000 worth thereof was bought by other persons; that appellees never did organize, or cause to be organized, a corporation to receive said property, in the manner and on the basis provided in said contract, and the only corporation they ever organized was not organized within a reasonable time, nor until February, 1890, after this suit was brought, and then $190,000 worth of the property and assets of said Manistee Salt and Lumber Company which appellees had purchased had in the meantime been sold and disposed of to other parties, and was not, nor were its proceeds, ever transferred to said corporation; that appellant did not, on or before May 1, 1889, tender the eleven thousand seven hundred ($11,700) dollars received by it under said contract, nor had appellees within that time performed their part of said contract, nor were they then ready to deliver to appellant any stock in the corporation provided for in said contract; that application was made by said receivers for an order to sell the property and assets of said insolvent company at the next term of the said circuit court for the county of Manistee, in chancery, and an order obtained on the 5th day of April, 1889, directing a sale thereof on the 18th day of June, 1889; that on April 18, 1889, appellant caused to be written by its vice-president to the appellees the following letter:

" 'UNION NATIONAL BANK,   }
CHICAGO, ILL., *April 18, 1889.* }

MANISTEE LUMBER CO.,          WILLIAM WENTE,
STATE LUMBER CO.,          R. R. BLACKER,
                                                          *Manistee, Mich.*

" '*Gentlemen*—Inasmuch as you have been unable to carry out the arrangement for the purchase of the assets of the Manistee Salt and Lumber Co., and the formation of a company to absorb and operate the same, within the time which you expected, and as there was a provision in the agreement which we made under date of March 7th, that we should return to you the amount of money which you paid us for our claim against this estate on or before May 1, if we desired to participate in the full benefits of the undertaking, we think now that this time should be extended to June 25, and you will please make a note to this effect upon the agreement and advise us that you have done so, if this meets with your approval.

" 'Respectfully yours,          J. J. P. ODELL, *V. P.*'

"To which appellees replied on April 23, as follows:

" '*Dear Sir*—After a consultation with all of the parties here in interest in the agreement with your bank, relating to the matter of the Manistee Salt and Lumber Company, we can not extend the time as requested.

" 'Yours very truly,          MANISTEE LUMBER CO.,
                                                          WILLIAM WENTE, *Sec.*'

"That nothing further passed between the parties until June 28, 1889, when appellant wrote appellees as follows:

" '*Gentlemen*—I am informed that the contemplated sale of the assets of the Manistee Salt and Lumber Company took place on the 18th of June, and that portion of them which you some time since proposed to purchase was in fact purchased by you, and I assume you are now prepared to organize the corporation which was to have been formed to acquire this property, and will be prepared to deliver to us the shares of

stock in this corporation as per our agreement of the 7th of March. You will please inform me when the stock will be ready for delivery, and when we can pay you the amount which we engaged to pay, viz.: $11,700, in payment of the same, and oblige.    "'Very truly yours,    J. J. P. ODELL, *V. P.*'

"To which appellees replied on the 1st day of July, 1889, as follows:

"'*Dear Sir*—Yours of the 28th ult., addressed to the writer and Mr. Blacker, is received. Will you please inform us if, at any time on or before the 1st of May, you tendered or paid us $11,700, as required in the contract under which you claim the stock? If you did, we have no knowledge of it, and if you did not, we believe you have no further business with us on the Manistee Salt and Lumber Company matter.

"'Yours very truly,    MANISTEE LUMBER CO.
WILLIAM WENTE, *Sec.*'

"That the receivers of said Manistee Salt and Lumber Company have declared and paid two dividends on the claims of creditors of said company, (including the claim of appellant assigned to appellees as aforesaid,) one of forty-seven per cent, on or about November 29, 1889, and one of five per cent, which last dividend the parties hereto have stipulated may be considered as having been paid prior to the beginning of this suit and included in any recovery to which appellant is entitled; that the dividends to which the claim of appellant was entitled (amounting to $20,280) were paid by said receivers to appellees, and that the dividends so paid to appellees on said claim, less the sum of $11,700 so as aforesaid paid by appellees to appellant at the time of the execution of said contract, amount, with interest from the commencement of this action, to the sum of nine thousand six hundred twenty-nine and $\frac{60}{100}$ dollars ($9629.60), which sum the court finds appellant is entitled to recover from appellees.

"It is therefore ordered, adjudged and decreed, that the judgment of the Superior Court of Cook county herein, against appellant, and in favor of appellees, be and it is hereby reversed and set aside, and that said appellant, the Union National Bank of Chicago, do now have and recover of and from said appellees, the Manistee Lumber Company, the State Lumber Company, William Wente and R. R. Blacker, said sum of nine thousand six hundred twenty-nine and $\frac{60}{100}$ ($9629.60) dollars so as aforesaid by the court found to be due, together with its costs in this court and in the court below to be taxed, and that they have execution therefor. And it is further ordered by the court, that the said Union National Bank of Chicago, appellant, recover of and from the said Manistee Lumber Company, the State Lumber Company of Michigan, and R. R. Blacker, appellees, its costs by it in this behalf expended in this court, to be taxed, and that it have execution therefor."

Messrs. Tatham & Webster, and Messrs. Dovel & Smith, for the appellants:

Where one has the option of two or more ways in which to fulfill an obligation, he must make his election before the time of performance has passed, or the right to elect will be lost. Bishop on Contracts, sec. 808; 2 Parsons on Contracts, (6th ed.) 805, 806; 2 Story on Contracts, sec. 1323; *Marlow* v. *Railroad Co.* 21 Fed. Rep. 383; *Corbin* v. *Fairbanks*, 56 Vt. 538; *Choice* v. *Mosely*, 1 Baily, 136; *McNitt* v. *Clark*, 7 Johns. 465.

The abandonment of performance is equivalent to an election. *Husson* v. *Oppenheimer*, 66 How. Pr. 306.

The failure of appellants to acquire the property and assets of the old corporation, and have the stock of the new company ready for delivery on May 1, 1889, was not a breach of the contract on their part, upon which suit might have been brought for the failure to deliver the stock on that day.

Where it appears that one of two covenants is to be performed at an earlier date than the other, the rule is simple and uniform, that the covenant that is to be performed first is independent and absolute, while the one that is to be performed last is dependent, the performance of the former being a condition precedent to the performance of the latter. Langdell's Cases on Contracts, part 2, p. 1054, sec. 122.

Mr. Parsons states the doctrine thus: "And if there is a day for the payment of the money, and this comes before the day fixed for the doing of the thing, or before the time when the thing, from its nature, can be performed, then the payment is at all events obligatory, and an action may be brought for it independently of the act to be done." 2 Parsons on Contracts, 677.

"If one party makes the performance of his promise conditional upon the performance by the other party, the latter can not sue the former for a breach of contract without averring that he has performed his part. * * * And if the party who was to perform his promise first, wholly fail to perform, the other is discharged." 3 Am. and Eng. Ency. of Law, 911, and cases cited.

If the interpreted contract demands successive steps, now a step by the one party and then a step by the other, whenever all on the one side is done which is to precede performance on the other, the party of the other side breaks it if he simply neglects to take his step, though no demand on him is made. And so, if the contract, as interpreted, empowers one of the parties to elect how it shall be fulfilled, such party must take the first step by making the election, until which there can be no breach by the other. Bishop on Contracts, sec. 1434.

At common law time is always of the essence of the contract. Wald's Pollock on Contracts, sec. 463; Bishop on Contracts, sec. 1344.

One's undertaking to do a thing on a particular day is broken if, when the day has passed with no default in the

MANISTEE LUMBER CO. *v.* UNION NAT. BANK.     501

Brief for the Appellee.   Opinion of the Court.

other party and no excuse appearing, it is not done.   Bishop on Contract, sec. 1344.

In all cases where, by contract, an option is reserved to a party to accept a thing at a particular time, time is of the essence of the contract.   2 Wharton on Contracts, sec. 887.

When a day is fixed for the performance, the lapse of that day without performance prevents the party from claiming the benefit of the contract.  *Davis* v. *Thomas,* 1 R. & M. 506; *Brooks* v. *Garrod,* 2 DeG. & J. 62; *Joy* v. *Birch,* 4 C. & F. 57; *Barrell* v. *Sabine,* 1 Vern. 268; *Longfellow* v. *Moore,* 102 Ill. 289; *Carter* v. *Phillips,* 144 Mass. 100.

Messrs. TENNEY, CHURCH & COFFEEN, for the appellee:

Whatever obligation rested on appellee, for any purpose, to make a tender of the money, was conditioned upon the performance by defendants of their agreement.

It is a good defense to an action on a contract, that the obligation to perform the act required was dependent upon some other thing which the other party was to do or failed to do; and if, before the one party has done anything, it is ascertained that the other party will not be able to do that which he has undertaken to do, this will be a sufficient reason why the first party should do nothing,—and this excuse is valid although the omission by the other party to do the thing required by him was produced by causes which he could neither foresee nor control.   2 Parsons on Contracts, 675; *Smith* v. *Lewis,* 26 Conn. 109; *Hefter* v. *Cahn,* 73 Ill. 296.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

We think, that the Appellate Court properly reversed the judgment of the trial court, because of the refusal of the latter court to hold as law the first of plaintiff's refused propositions. The proper construction of the language of the contract is, that the Bank was to receive the stock at the same time, at which it should make its tender of $11,700.00.   The words,

"on or before the first day of May, 1889," qualify the verb, "receive," as well as the noun, "tender." The Bank was not only to tender the money on or before the first day of May, 1889, but was also to receive the stock on or before that day. It was contemplated, that the tender of the money and the receipt of the stock should be concurrent acts. If the Bank was obliged to tender the money on or before May 1, 1889, whether the proposed corporation was then organized or not, an acceptance of the tender by the defendants would have placed the bank at their mercy, because they may not have chosen to organize the corporation, or to deliver the stock, for an indefinite time in the future. Indeed, it is conceded that the corporation was not organized until after the beginning of this suit. It is not denied by appellants, that they were unable to deliver the stock on or before May 1, 1889, or at any time before February, 1890.

As the appellee knew that the appellants had not organized the corporation and could not deliver the stock on May 1, 1889, it was not obliged to make the tender on that day. "It is a good defence to an action on the contract, that the obligation to perform the act required, was dependent upon some other thing which the other party was to do, and has failed to do. And if before the one party has done anything, it is ascertained that the other party will not be able to do that which he has undertaken to do, this will be a sufficient reason why the first party should do nothing." (2 Pars. on Cont. 675). Where the agreement requires the acts of both parties to be done at the same time, one is not obliged to perform his part before the other. (*Smith* v. *Lewis*, 26 Conn. 109). The word, "tender," as applied to the case of mutual and concurrent promises, means readiness and willingness to perform, provided the other party is ready and willing to perform. (*Clark* v. *Weis*, 87 Ill. 438.)

The correspondence shows, that the appellee was willing to waive the failure of the appellants to organize the corpora-

tion as early as May 1, 1889, and to pay the $11,700.00 in exchange for stock as late as June 28, 1889. But the letter written by the appellants on July 1, 1889, amounted to an absolute refusal to deliver the stock at any time. That letter takes the ground, that appellants were released from all liability because appellee did not tender the money on or before May 1, 1889, although appellants do not claim that they were then able to deliver stock, or had taken any steps to organize a corporation. We are unable to concur in the construction placed upon the contract by the appellants.

Appellee assigned its claim to the appellants, upon the express condition, that it was to have stock to the amount of $11,700.00 in the proposed corporation. When, therefore, appellants denied their liability to deliver the stock at any time, the condition failed and the assignment was without consideration. A right of action then arose in favor of appellee to recover the dividends upon its claim, which appellants had collected from the receivers, as so much money had and received to its use, less the $11,700.00 already paid. But independently of this right of action upon the common counts, the last clause of the contract provided, that appellants should pay over the dividends, if they should "fail to acquire said property and assets." The words, "fail to acquire said property and assets," construed in connection with all the other phraseology of the agreement, evidently mean a failure to acquire said property and assets as the property of the proposed corporation, whose stock was to be delivered to appellee. It cannot be said, that appellants would not be bound to pay over the dividends to appellee, if they had acquired the property and assets of the insolvent corporation for themselves and without transferring such property and assets to the proposed new corporation. The payment of the dividends is imposed as a penalty for the failure to do what would be of benefit to appellee, but the acquirement of the property and assets by the appellants could have been of no benefit to ap-

pellee, unless said property and assets were transferred to the new corporation as a basis for issuing the stock in question. We therefore think, that a right of action for the amount of the dividends accrued to the appellee under the contract because appellants failed to acquire said property and assets in the manner and for the purposes contemplated by the contract, namely, for the purpose of transferring such property and assets to the proposed corporation, and for the further purpose of issuing stock in such corporation to appellee.    It appears from the facts found, that appellants did not acquire all the property of the insolvent corporation, and that they sold a part of the property, which they did acquire, for $190,-000.00 and failed to put it into the new corporation.

We do not wish to be understood as deciding upon the validity or invalidity of the arrangement for a syndicate entered into by a national bank, and other corporations and individuals, as referred to in the agreement.    As this question is not discussed by counsel on either side, we have not considered it.

The only question, which remains, is as to the power of the Appellate Court to enter a judgment for the plaintiff after reversing the judgment entered by the trial court for the defendants.

Where the trial has been by agreement before the court without a jury, resulting in a judgment for the defendant, the Appellate court may not only reverse, but may also render judgment for the plaintiff, if the law, as applied to the facts found by that court necessitates such a judgment, and if it can be ascertained from the facts so found what judgment ought to have been rendered by the court below.    (*Prince* v. *Lamb,* Breese, 378; *Wilmans* v. *Bank of Illinois,* 1 Gilm. 667; *Commercial Ins. Co.* v. *Scammon,* 123 Ill. 601; *Commercial Union Assurance Co.* v. *Scammon,* 126 id. 355).

In the case at bar, the trial was before the court without a jury by agreement.    The Appellate Court has made a full reci-

tation in its judgment of the facts found by it.    Among the facts so found are the following:   1. that the appellee did not make a tender of the money on or before May 1, 1889 ; 2. that the appellants had not acquired the property and assets of the insolvent corporation, nor had they organized the proposed new corporation, nor were they prepared to deliver the stock, on or before May 1, 1889; 3. that, on July 1, 1889, appellants wrote a letter to appellee declining to have any further business with it, or, in other words, to deliver the stock to it, upon the sole ground that it had not made a tender of the money on or before May 1, 1889 ; 4. that neither on July 1, 1889, nor at any time before the beginning of this suit, had appellants organized the proposed corporation.    An application of the law to the facts thus found, leads to the conclusion, that the appellee was entitled to rescind the assignment of its claim, and to recover the dividends thereon, theretofore collected by the appellants.    From the facts found, a judgment for the plaintiff follows as a necessary consequence, in view of the construction already given to the contract.    The result could not have been different, if the cause had been remanded to the trial court.    The amount of the judgment could be readily ascertained by deducting the sum paid from the amount of the dividends already received.

The present case manifestly belongs to that class of cases, where the Appellate Court is authorized not only to reverse the trial court, but also itself to render judgment.   (*Ins Co.* v. *Scammon, supra*).

The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*