CHARLES W. CRAMER, RECEIVER OF CONNECTICUT
AGRICULTURAL EXCHANGE, INCORPORATED, *vs.*
FRANK W. BURNHAM.

First Judicial District, Hartford, May Term, 1927.

WHEELER, C. J., MALTBIE, HAINES, BANKS and MARVIN, Js.

A corporation acquires a legal existence as such, upon the approval
of its certificate of incorporation, but with limited rights and
liabilities only. Before final organization it may not transact
the business contemplated by its charter, nor may it enforce
contracts made in its name, although such obligations are not
void *ab initio* and may become binding, upon principles of
ratification or estoppel, after organization has been completed.

The statute which expressly empowers incorporators to raise, by
stock subscription, sufficient capital to enable them to proceed
with the corporate organization, necessarily implies authority
to incur, in a reasonable and proper manner, the expense which
is presumably necessary to effect that result.

Under §§ 3432 and 3435 of the General Statutes, the directors of a
corporation, or its receiver, are the only persons authorized to
make a legal "call" for the payment of a stock subscription;
and since, ordinarily, such a "call" is a condition precedent to
the subscriber's obligation to pay, it follows that payment of
the subscription cannot be enforced by act of the incorporators.

Although as between the subscribers themselves and the organized
corporation, the payment of their subscriptions is conditional
upon a legal "call," equity recognizes a direct obligation upon
their part toward the creditors of the corporation and, as stock-
holders, will treat them as the real parties in interest and
ultimately liable to the creditors to the amount of their sub-
scriptions.

Where, as in this State, a corporation comes into existence upon the
approval of its certificate of incorporation, a subscription to
stock, made thereafter but before the organization is com-
pleted, is not a mere revocable offer to take the specified num-
ber of shares, but a valid and irrevocable contract, the con-
sideration for which, on the part of the corporation, is its
promise to furnish the subscriber with the stock when the organ-
ization has been perfected; and if this consideration fails
through the definite failure, refusal or inability of the corpora-
tion to furnish the stock, as in the present case where the
corporate enterprise was wholly abandoned before final organi-
zation, the contract cannot be enforced nor, as between the

Cramer *v.* Burnham.

original parties, can a promissory note which was given in
payment for the subscription. (*Two judges dissenting.*)

Although a stock subscription is unenforceable through failure of
consideration, the subscriber may still be bound, upon prin-
ciples of agency, to pay his pro rata share of the debts properly
incurred on his behalf by the incorporators within the scope
of their authority; and this liability may be judicially deter-
mined and enforced in proceedings instituted by the corporate
receiver in the court of his appointment.

Argued May 5th, 1927—decided January 27th, 1928.

ACTION against the maker of a promissory note to
recover the amount thereof, brought to the City Court
of Hartford and tried to the court, *Ross, J.;* judgment
for the plaintiff, and appeal by the defendant. *Error;*
*judgment directed for defendant for costs.*

*Arthur Perkins* and *Roger Wolcott Davis,* with
whom was *Richard T. Steele,* for the appellant
(defendant).

*Ufa E. Guthrie,* for the appellee (plaintiff).

HAINES, J.   This is an action brought to the City
Court of Hartford by the receiver of the Connecticut
Agricultural Exchange, Incorporated, upon a note for
$75 given by the defendant in payment of the balance
of a subscription for four shares of the capital stock
of that corporation, of the par value of $25 each.

Prior to the defendant's subscription, a certificate of
incorporation had been filed with and approved by the
Secretary of the State, but the certificate of organiza-
tion was never filed and the plan to do so was definitely
abandoned. Other subscriptions were made, and some
paid in cash, some in notes, and some in both. The
present defendant paid $25 in cash and gave the note
of $75 here in question for the balance.

The finding discloses that out of the funds in his
hands the receiver has paid expenses of administra-

tion of the receivership, and that at the time of the trial of this action there were no outstanding claims of creditors except certain contested claims against which the receiver has reserved sufficient for settlement in full. It further appears that the receiver has paid two dividends, aggregating twenty-five per cent of their subscriptions, to those stockholders who had theretofore paid in full, and there is likely to be available sufficient funds to pay further dividends. There has never been an organization of the company, no officers have been elected or by-laws adopted, and no stock has ever been issued.

Save as may be implied by law, the defendant has never consented to the payment of any claims of the promoters of the company nor of any bills incurred by them or by the company.

The City Court of Hartford gave judgment for the plaintiff for the full amount of the note, with interest and costs, overruling the contentions of the defendant in his answer and counterclaim, and the questions thus raised are now brought before this court by appeal. His claims may be briefly summarized as follows: (1) that the incorporators were not authorized to incur liabilities which must be paid by the subscribers; (2) that there is no liability on the defendant in this suit to pay any debts incurred by the incorporators; (3) that the corporate venture having failed, the defendant subscriber is freed from obligation upon the note in question; (4) that the failure to organize and issue stock, and the conclusive inability now to do so, is a complete defense in a suit to collect the amount of the subscription note; (5) that it must be shown that the subscriber consented to the incurring of debts by the incorporators, in order to recover upon a subscription; (6) that, there being no such evidence in this case, judgment should have been rendered for the defend-

ant; (7) that the court erred in refusing to correct the finding in two particulars.

The record does not contain the draft-finding and we are therefore unable to pass upon the last claimed error.

The complaint sets up that the plaintiff is the bona fide holder of this note for value. One of the defenses is that the consideration has failed, thus freeing the maker from liability to pay the note. This issue is a controlling one, and if the defense be valid, the present action cannot be maintained.

Upon approval of the certificate of incorporation, the Connecticut Agricultural Exchange became in legal contemplation, an existing corporation, but with limited rights and liabilities only. General Statutes, § 3514; *Chieppo* v. *Chieppo,* 88 Conn. 233, 90 Atl. 940.

The statute expressly denied it the right to perform any of the business contemplated by the charter, this right being reserved for the completed organization in charge of the officers and directors. General Statutes, § 3514.

Contracts made in the name of this inchoate corporation would not be void *ab initio,* but only enforceable after the organization had been completed, and that, on the principle of ratification or estoppel. *Chieppo* v. *Chieppo, supra,* p. 239. So that before final organization the corporation remained without power to enforce contracts in its name. *Naugatuck Water Co.* v. *Nichols,* 58 Conn. 403, 408, 20 Atl. 315.

The approval of the certificate of incorporation put this corporate entity into the hands and under the exclusive control of the incorporators, who were the agents of the corporation and of the subscribers who composed it. These incorporators were expressly authorized by statute to take such steps as were necessary and proper to obtain further subscriptions to the

capital stock.   This was manifestly necessary to ensure the raising of the capital named in the certificate of incorporation as the amount with which the corporation would begin business.   The right to file the certificate of organization and to enable the corporation to go forward with its charter purposes, could not be obtained till this was done.   General Statutes, § 3514. It will be presumed that this work involved some expense, and the authority to incur this in a reasonable and proper manner, is necessarily implied by the statute granting them the power to proceed.   There may be two distinct classes of corporate indebtedness— those obligations entered into before organization and after incorporation, and those incurred after organization.   *Naugatuck Water Co.* v. *Nichols,* 58 Conn. 403, 408, 20 Atl. 315.

Subscribers, by the terms of their agreement, ordinarily become liable to pay their subscriptions only at such times as legal "calls" are made upon them by the directors.   These provisions for calls are held to be conditions precedent to the obligation to pay, and the corporation cannot compel payment except upon the performance of the condition.   2 Morawetz on Corporations (2d Ed.) p. 791; 2 Clark & Marshall on Corporations, p. 1526.

In conformity to this rule, our statute authorizes only the directors of a corporation, or its receiver, to make legal calls for the payment of stock subscriptions.   General Statutes, §§ 3432, 3435.   The incorporators are not, for obvious reasons, so authorized, and it results that the payment of a stock subscription cannot be enforced by act of the incorporators.

Equity looks upon the subscribers as having a definite relation to creditors of the corporation, and as having an obligation to contribute to the capital of the company as a fund for their security.   When they

become stockholders, which they do only after the completed organization, equity treats them as the real parties in interest, carrying on the business of the organization and incurring debts, under a corporate name, and the officers of the company as the stockholders' agents for that purpose. Equity therefore considers these stockholders unconditionally liable to the company's creditors to the amount of their holdings and not subject to the precedent condition that a call must be made in order to bring the obligation to pay into effect. "The fact must be recognized that the shareholders are the real parties in interest, who carry on business and incur debts in the corporate name, and that the directors are really the agents and nominees." "In equity, therefore, the shareholders of an insolvent corporation are held to be unconditionally liable to its creditors to contribute the amount of capital subscribed by them, although their subscriptions were conditional, as between themselves and the company, upon a regular call or assessment by the board of directors." 2 Morawetz on Corporations (2d Ed.) pp. 791, 792. The subscription is treated as an irrevocable dedication of the sum named therein, to the payment of all the valid debts of the corporation. *Stamford Trust Co.* v. *Yale & Towne Mfg. Co.,* 83 Conn. 43, 75 Atl. 80.

Decisions in different jurisdictions are not in accord as to the *status* of subscriptions made before the corporation is organized. Where there is no statute making the corporation a distinct entity before the certificate of organization is filed, the subscription is generally held to be a revocable offer to take stock, and not a contract. In such cases there is considered to be but one party to the transaction, and the subscription does not take on the elements of a legal contract till the organization is completed by the filing of the certifi-

cate of organization. But where the subscription is one of the steps specifically authorized by the statute in the process of forming the corporation, as in this State by General Statutes, § 3510, by which the corporation comes into existence upon the filing of the certificate of incorporation, it becomes immediately a valid and binding contract and irrevocable. In such cases the subscriber is held to have contracted with the corporation, and the consideration for his undertaking is the agreement of the corporation to furnish him with the stock when the organization is completed. 1 Thompson on Corporations (3d Ed.) pp. 822, 838; 2 Clark & Marshall on Corporations, pp. 1368, 1369; 1 Cook on Corporations (8th Ed.) p. 373; 1 Morawetz on Corporations (2d Ed.) § 55.

The defendant's subscription thus has the *status* of a contract, and the note now in suit is accessory to it, and if the defendant is liable in the present action, it is because he is liable on the contract of subscription for which the note stands. *Howe* v. *Raymond,* 74 Conn. 68, 70, 49 Atl. 854.

The consideration for his contract was the promise of the corporation to furnish him the stock, and the definite inability of the corporation to do so, by reason of the abandonment of the enterprise, results in a failure of the consideration, and the payment of the subscription as such cannot be enforced.

To make a subscription contract binding, there must be mutuality of obligation. The subscription is for stock, to be legally issued. "A failure to form the projected company on terms named in the subscription paper . . . will constitute a failure of consideration, so that the subscriber will not be liable on his subscription, and may recover back money which he has paid; and the same must be true where the enterprise has been wholly abandoned; . . . and a refusal or

failure to issue the stock subscribed for or inability to issue it, will constitute a failure of consideration." 14 Corpus Juris, p. 526, § 786, p. 528, § 791, and cases cited; 1 Cook on Corporations (8th Ed.) p. 354; 2 Clark & Marshall on Corporations, pp. 1509, 1510; *Manistee Lumber Co.* v. *Union National Bank,* 143 Ill. 490, 502, 32 N. E. 449; *Bradford* v. *Harris and Birckhead,* 77 Md. 153, 26 Atl. 126; *Minor* v. *Gordon,* 170 Ky. 609, 186 S. W. 480.

On recognized legal principles, it also follows that a note given in payment for such a subscription is subject to the same defenses and cannot be enforced as between the original parties to the contract. *Pulsifer* v. *Hotchkiss,* 12 Conn. 234, 241; *Bunnell* v. *Butler,* 23 Conn. 65, 68; *Howe* v. *Raymond,* 74 Conn. 68, 49 Atl. 854; *Tice* v. *Moore,* 82 Conn. 244, 73 Atl. 133.

As we have indicated, a subscriber to stock is liable to the extent of his share in the enterprise, measured by his subscription contract, for proper expenses incurred by the incorporators—his agents—in forming the corporation, but this is a liability altogether separate and distinct from the liability to pay for stock under the terms of his stock subscription. This obligation to pay his pro rata share of debts properly incurred arises from the principles of agency and not from the terms of the contract for stock which he signed. This liability can be judicially determined and enforced by the receiver by a proper proceeding in the court of his appointment.

The present action, however, is one at law to recover the full amount of the defendant's note given for the balance of a stock subscription. His defense, that the consideration has failed, would be a complete legal defense to an action on the contract itself; and the principle has equal application whether the action

is upon the subscription or upon a note given in payment therefor. It is apparent that upon the issues joined, the facts found, and the legal principles which have been discussed, the plaintiff cannot recover in this action, either on the ground that the contract of subscription is still good, or that part or all the amount of the note is needed to pay valid claims of creditors. The issue framed by the pleadings is strictly limited to liability to pay for stock which can now never be issued, and the trial court was in error in holding that the consideration for the note had not failed and in rendering judgment for the plaintiff.

In view of this conclusion, it becomes unnecessary to discuss other reasons of appeal.

There is error; the judgment is reversed and the City Court of Hartford is directed to render judgment for the defendant for costs.

In this opinion MALTBIE and MARVIN, Js., concurred.

BANKS, J. (dissenting). The Connecticut Agricultural Exchange, Incorporated, filed its certificate of incorporation with the Secretary of State and he approved the same on May 2d, 1921. Its corporate existence thereupon, under General Statutes, § 3510, began, and we held in *Chieppo* v. *Chieppo*, 88 Conn. 233, 237, 90 Atl. 940, that it then became "not only a *de facto* but a *de jure* corporation."

General Statutes, § 3511, provides: "After the approval of the certificate of incorporation as aforesaid and until the directors are elected, the incorporators shall have charge of the affairs of the corporation, and may take such steps as are necessary or proper to obtain subscriptions to its stock." This statute contemplated the obtaining by the incorporators of sub-

scriptions to the capital stock of the corporation and the incurring of expense in so doing. The statutes empower the incorporators to act for the corporation, to take charge of its affairs and to take the necessary or proper steps to obtain subscriptions to the stock. Whatever the incorporators do to this end they do for the corporation, and so long as they act within the legitimate exercise of the authority vested in them by this statute they are not liable for their acts any more than any other agent acting similarly in any other business matter would be liable. The subscribers whom they obtain do not become indebted to them. Subscriptions to stock fall within the class of business matters which the incorporators may transact for the corporation, which is as much the business of the corporation as any of the classes of business matters which the corporation may transact when its organization has been perfected. Organization contracts and debts of this character the incorporators may incur in behalf of the corporation until the majority of its directors shall duly file a certificate of the organization of the corporation. General Statutes, § 3514. Thereafter, the corporation may make any contracts within its power to make.

When the incorporators actually engage in business undertakings before the certificate of organization is thus filed, the contracts are not necessarily void. We say in *Chieppo* v. *Chieppo, supra,* at pages 238, 239: "Whether any such contract is enforceable or not depends in each case upon balancing considerations of public policy against the equitable rights of the parties. . . . The result which we reach is that in cases where the contract would otherwise be enforceable on principles of ratification or estoppel, § 69 of the Corporation Act [of 1903, now General Statutes, § 3514] will not prevent a business contract, made before the

certificate of organization was filed, from being enforced against the corporation after such certificate is filed." The two classes of contracts to which we have referred are described in *Naugatuck Water Co.* v. *Nichols,* 58 Conn. 403, 20 Atl. 315, our statute at that time being different, but the two classes being existent then as now. The provisions of §§ 3510 and 3511, according corporate power to a corporation as soon as its certificate of incorporation is filed with the Secretary of State as approved by him, was a departure from the former conception of corporation liability existing in this jurisdiction prior to the passage of these statutes, and we think generally at that time. The majority opinion fails to note the change made in our law, first by the Corporation Act of 1901 and then by the Revision of 1902, and later by the Corporation Act of 1903, having the same provisions as §§ 3510 and 3511

The corporation secured subscriptions for a substantial amount, which were paid for in whole or part in cash, or in whole or part in notes. By order of the Superior Court the cash and notes so collected were turned over to the receiver and he was directed to collect all the outstanding assets of the corporation, of which the note in suit was a part. The subscription was taken in the name of the corporation, the note was made to the corporation, and all this was done under the express authority of General Statutes, § 3511. To deny the right of the receiver of this corporation to collect a note given in payment of a subscription, or to maintain an action directly upon a subscription made and unpaid, is to deny an authority vested in this receiver, in virtue of his office, to collect an asset of the corporation which came into being by express authority conferred upon the incorporators by statute.

This is not an action by a receiver to collect an

unpaid stock subscription under the statute (§ 6083), and the discussion in the majority opinion of the liability of subscribers to pay "calls" is, it seems to me, beside the point. The defendant has paid his subscription partly in cash and partly by the note in suit, which latter is an asset of the corporation in the hands of the receiver. Upon the pleadings, the only question before us is whether the abandonment of the corporate enterprise, after the filing of the certificate of incorporation but before its organization was completed, is a defense to the action. An original subscription to corporate stock is in the nature of an agreement to combine a portion of one's assets with the assets of others in a business enterprise, rather than a contract for the purchase of shares of stock. The consideration for the subscription is the formation of the company and the admission of the subscriber to membership therein. The majority opinion assumes that the consideration for the contract of subscription is the stock to be issued, and consequently fails to note the difference between a contract with a promoter to subscribe for stock in a corporation to be formed, and an original subscription to the stock of a corporation already formed and legally existing. It cites authorities in support of the proposition that one who has subscribed for the stock of a corporation is not liable upon his subscription and may recover back the money he has paid if the contemplated enterprise is abandoned or the company fails to be incorporated, and states that a note given in payment of such a subscription is subject to the same defense. That is undoubtedly the law in the case of a subscription made prior to and in anticipation of incorporation. In that case the subscriber has paid or agreed to pay money to a promoter to become a stockholder in a corporation and no corporation is formed. There is a

clear failure of consideration. Here the situation is quite different. The certificate of incorporation had been filed, and by virtue of the provisions of § 3510 of the General Statutes corporate existence had begun and the defendant's subscription became immediately a valid and binding contract. *Chieppo* v. *Chieppo, supra.* The consideration of his contract was his membership in the corporation and his consequent right to have stock issued to him if and when the organization of the corporation was completed. The fact that the stock was worthless, or that the certificates were not or could not be issued because of the subsequent abandonment or failure of the enterprise, does not constitute a failure of consideration for his note, since the stock was not the consideration for which it was given. It is unquestioned law that in such a situation the abandonment or failure of the enterprise subsequent to incorporation is no defense to an action upon a note given in payment of a stock subscription. 14 Corpus Juris, p. 212; 1 Cook on Corporations (8th Ed.) §§ 184, 189, 190; 7 Ruling Case Law, pp. 107, 258.

The receiver has paid all expenses of the receivership thus far incurred together with all claims against the corporation, except those contested, out of the cash so received and assets so collected. He has paid two dividends totaling twenty-five per cent of the amount of the subscriptions so paid and there is likely to be available funds sufficient to pay other dividends to these subscribers. There will necessarily be an unequal and inequitable burden placed upon the subscribers in the settlement of the receivership.

The receiver is entitled upon this record to the judgment upon the note which the trial court rendered in this action. The equities between the subscribers may be worked out in the Superior Court in the settlement of the receivership. Whether the Superior Court could

have ordered the collection of a part of this note is a question not raised upon the record.

In this opinion WHEELER, C. J., concurred.