THOMAS HOWE *vs.* GEORGE C. RAYMOND ET AL.

Second Judicial District, Norwich, May Term, 1901.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

"Trial by jury," as used in the common law and in the constitutions of the several States, implies the presence and supervision of a judge empowered to instruct the jury as to questions of law, to advise them on the facts, and to set aside their verdict if in his opinion it is clearly against the law or the evidence.

In passing upon a motion to set aside a verdict as against the evidence, the trial judge is bound to make use of his knowledge of human nature and of the motives which influence and control the conduct of men, and by this means to test the evidence and reach his decision.

In the present case the main issue between the parties was whether the plaintiff was the *bona fide* purchaser for value of a promissory note executed by the defendants. The plaintiff had a verdict which the trial judge set aside. *Held*, upon a review of the evidence and claims of the parties, that the action of the trial judge ought not to be disturbed.

Argued May 29th—decided July 23d, 1901.

ACTION by an indorsee to recover the amount of a promissory note, brought to the Superior Court in New London County and tried to the jury before *George W. Wheeler, J.;* the plaintiff had a verdict which the trial court, upon motion of the defendants, set aside as against the evidence, and the

plaintiff appealed alleging error in this action of the court. *No error.*

This action was brought by the plaintiff as the indorsee and holder of a note, which was as follows:—

"$933.33.        NORWICH, CONN., Feby. 2nd, 1895.

"One year after date, for value received, we, or either of us, promise to pay H. P. Reynolds, or bearer, Nine Hundred & thirty-three 33–100 Dollars, at some National Bank, with interest at 6 per cent. per annum, interest payable annually."

The note was signed by the defendants, and was indorsed by H. P. Reynolds. The defendants answered that the note was without consideration, and that the plaintiff was not an innocent holder of the note. This the plaintiff denied. The case was tried on this issue, closed to the jury, and the plaintiff had a verdict. The court, on motion, set the verdict aside. The plaintiff has appealed, alleging that the court erred in so doing.

*Hadlai A. Hull*, with whom was *William F. M. Rogers*, for the appellant (plaintiff).

*Donald G. Perkins*, with whom were *Chas. F. Thayer* and *Joseph T. Fanning*, for the appellees (defendants).

ANDREWS, C. J. It appeared on the trial that the defendants had, prior to the execution of the note on which the suit was brought, entered into a written agreement with H. P. Reynolds, the payee, of the following terms and tenor:—

"NORWICH, CONN., Dec. 6th, 1894.

"We, the undersigned subscribers, realizing the necessity of improving our stock, do hereby agree to pay H. P. Reynolds $100 for each share in the Cleveland Bay Horse Company that is now being formed at Norwich and vicinity to buy one imported Stallion of H. P. Reynolds of Franklinville, N. Y.

"Capital Stock, $2,800; No. shares 28.

" Name of horse, Knowl Reward 871.

" Payments to be made, cash, or one-third in one year, one-third in two years, and one-third in three years, secured by joint notes with interest."

This was signed by all the defendants.

The note in suit was given pursuant to the terms of that agreement. The contract then evidenced by the note was entered into as security for the contract evidenced by said written agreement, that is, the note was accessory to the said written agreement; in other words, the said written agreement was the principal contract, and the note was an accessory one. It appeared, also, indeed it was conceded by the plaintiff, that the Cleveland Bay Horse Company, named in the said agreement, was never formed, and that no shares of stock in such company were ever issued. Whether this was the fault of the plaintiff or that of the defendants was in dispute. They claimed that it was his and that the note, therefore, on which the suit was brought, never became a binding contract between the makers and the payee. There can be no accessory contract unless there is a principal one. This is the well-established law. *Eising* v. *Andrews*, 66 Conn. 58; *Ferry* v. *Burchard*, 21 id. 597, 603; *Willey* v. *Paulk*, 6 id. 74; *DeForest* v. *Strong*, 8 id. 513, 522; *Bull* v. *Allen*, 19 id. 101; *Glazier* v. *Douglass*, 32 id. 393; *Candee* v. *Skinner*, 40 id. 464.

One Spang was the agent of Reynolds in procuring signers to the said agreement, and to the note. There was a good deal of evidence tending to prove that Spang represented to the defendants, some or all of them, that the note would not be negotiated, and that they would never be called upon to pay the same otherwise than as security for the said shares of stock.

The defendants in their answer alleged that the plaintiff, at and before the time he became the owner of the said note, had notice of the infirmity and invalidity of the same, and of the equities and defense thereto, as between the defendants and the said Reynolds, and took the same in bad faith, and

was not the innocent holder thereof in good faith and for value. The verdict of the jury negatived these allegations.

The judge thought the verdict was against the evidence and set it aside. It was upon this part of the case that both parties laid the most stress.

It is true that the jury is a tribunal which is regarded by the law as one especially fitted to decide controverted questions of fact upon evidence. The jury decides how much credibility is to be given to each witness, what weight justly belongs to the evidence, and between the statements of hostile and contradictory witnesses, where the truth is; and if the verdict to which they have agreed is a conclusion to which twelve honest men, acting fairly and intelligently, might come, then their verdict is final and cannot be disturbed. In such a case if the trial judge should set aside their verdict he would be himself in error. He would pass the true bounds of his own function and invade the province of the jury. It is only when the verdict is manifestly and palpably against the evidence in the case—so much as to indicate that the jury was swayed by passion, by ignorance, partiality or corruption—that it should be set aside on that ground and a new trial be granted. *Lewis* v. *Healy*, 73 Conn. 136. There are, to be sure, sometimes, verdicts of this kind, when the trial judge is required by the interests of justice to set them aside. That such verdicts are infrequent is a tribute to the general intelligence, fairness and integrity of juries. This power of supervision and correction which the judge has over the verdict is an essential part of the jury system. It tends to make jurors more careful in reaching their conclusions, and gives confidence to all suitors that the finding of a jury will not be affected by any improper motives. " ' Trial by jury,' in the primary and usual sense of the term at the common law and in the American constitutions, is not merely a trial by a jury of twelve men before an officer vested with authority to cause them to be summoned and empanelled, to administer oaths to them and to the constable in charge, and to enter judgment and issue execution on their verdict; but it is a trial by a jury of twelve men, in the presence and un-

der the superintendence of a judge empowered to instruct
them on the law and to advise them on the facts, and (ex-
cept on acquittal of a criminal charge) to set aside their ver-
dict, if in his opinion it is against the law or the evidence."
*Capital Traction Co.* v. *Hof*, 174 U. S. 1, 13; *Bartholomew* v.
*Clark*, 1 Conn. 472; *Bissell* v. *Dickerson*, 64 id. 61; *Loomis* v.
*Perkins*, 70 id. 444.

In passing upon a motion to set aside a verdict, the trial
judge must do just what every juror ought to do in arriving at
a verdict.   The juror must use all his experience, his knowl-
edge of human nature, his knowledge of human events, past
and present, his knowledge of the motives which influence
and control human action, and test the evidence in the case
according to such knowledge and render his verdict accord-
ingly.   A juror who did not do this would be remiss in his
duty.   The trial judge in considering the verdict must do
the same, or fail in the discharge of that function which the
law has laid upon him; and if, in the exercise of all his
knowledge from this source, he finds the verdict to be so
clearly against the weight of the evidence in the case as to
indicate that the jury did not correctly apply the law to the
facts in evidence in the case, or were governed by ignorance,
prejudice, corruption or partiality, then it is his duty to set
aside that verdict and to grant a new trial.

In the present case the picture presented by the evidence
is very interesting and invites attention.   The plaintiff was
the keeper of a livery and sales stable in the city of New
London.   So far as appears he was a man of limited capital.
He bought these notes amounting in the aggregate to $2,800,
on which some indorsements had been made, so that when
he bought them the amount due was $2,000.   He paid the
amount by the transfer to Reynolds of two horses, some blan-
kets, and his own check for $1,200.   This check overdrew
his account.   He has been obliged to use these notes as col-
lateral to obtain credit.   That such a man should tie up his
money so that it could not be used for one, two, or three
years, while it was not fraudulent, suggests the thought that
there was some special inducement to him to do it.   A man

Howe *v.* Raymond.

who is in the horse trading business ordinarily wants all his money where he can use it at any minute. Six per cent interest is not an equivalent for the opportunities of trade. He knew that the company, mentioned in the agreement between Reynolds and the maker of the note, had not been formed, and that the shares of stock had not been issued. He had been acquainted with Reynolds' method of doing the horse business. There had been a previous horse company in New London organized by Reynolds, with which he had been connected. It is not unjust to him to assume that he knew the terms of the written ageement.

The plaintiff testifies that he went with Reynolds to various parties in Norwich to induce them to buy these notes. None of them would do so. The evening of that day the plaintiff himself, at New London, bought these notes of Reynolds. Seven witnesses each testify to facts which show that the plaintiff had knowledge of the fraud and illegality which attended these notes in the hands of Reynolds; and the testimony of at least five of them is of such a nature that they are wilful false swearers, or the plaintiff did have such knowledge. All the facts in the case, and the surrounding circumstances, are consistent with their testimony and inconsistent with the story of the plaintiff. The plaintiff alone contradicted these witnesses. The verdict says that the plaintiff alone is right, and that all the other witnesses, strengthened by the surroundings, are wrong. The trial judge had seen all the witnesses: the plaintiff as a witness for himself, and those who testified for the defendants. He had heard their testimony, observed their demeanor on the stand, their manner and bearing, their intelligence, character and means of knowledge. He had learned from the trial the probabilities which attended the sale of those notes by Reynolds to the plaintiff, as indicating whether the plaintiff was an innocent purchaser or otherwise. Acting upon this knowledge and while it was all fresh in his mind he set the verdict aside; for the reason, as he says, that it was manifestly and palpably against the evidence in the case, and

that if it was permitted to stand fraud would prevail. We think his action ought not to be disturbed.

There is no error.

In this opinion the other judges concurred.