MALCOLM A. ANDERSON *vs.* JOSEPH COLUCCI, ADMINISTRATOR (ESTATE OF ANTHONY COLUCCI) ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued October 5th—decided November 20th, 1934.

*William H. Comley,* for the appellant (defendant The Autocar Sales & Service Company).

*Matthew H. Kenealy,* with whom was *Daniel E. Ryan,* for the appellee (plaintiff).

HINMAN, J.   In the evening of September 1st, 1931, the plaintiff was riding in the rear seat of an automobile being driven westerly on the Boston Post Road in Greenwich by Anthony Colucci when it collided with a large tow-car owned by the defendant The Autocar Sales & Service Company, and the plaintiff was injured.   He brought an action against both the administrator of the estate of Colucci, who was killed in the accident, and the Autocar Company.   Upon the first trial the court entered a nonsuit as to both defendants which, on appeal to this court, was sustained as to Colucci but overruled and a new trial ordered as to the Autocar Company (*116 Conn. 67, 163 Atl. 610*).   Upon a retrial the jury returned a verdict for this defendant, but the trial court granted a motion to set it aside, from which action the present appeal was taken.

There appears to have been no substantial dispute as to certain circumstances preliminary to the colli-

sion.  A truck driven by John Stewart, traveling westerly, had become disabled and was parked off the northerly side of the concrete pavement opposite a place of business, located south of the highway, known as Adams' Stand.  Stewart telephoned to the Autocar Company, in New York, to send out a tow-car to assist him, and late in the evening it arrived, driven by Charles Toepfer, at a gasoline station located on the southerly side of the highway westerly from Adams' Stand.  Stewart thereupon crossed the road and directed Toepfer as to the location of the stalled truck. The tow-car proceeded from the gasoline station onto the highway and to Adams' Stand, where it again turned off the concrete and then, in a semicircular course, crossed the highway toward the front of the truck.  Just previously Stewart had returned, across the road, to the front of the truck.  The highway, consisting of four nine-foot strips of concrete with tarred macadam shoulders, is substantially straight in both directions from the point of collision.  From the east a grade, the top of which is over seventeen hundred feet distant, descends to about five hundred and eighty feet easterly from the point of collision and then ascends most of the remaining distance.  The evidence would fully justify the jury in finding that the tow-car had reached a point where its front wheels were about a foot from the front of the truck and was in a diagonal position across the most northerly lane of concrete when the Colucci car struck the right side of its rear end.

The validity of the trial court's action in setting aside the verdict for the defendant depends largely upon the evidence as to the proximity of the westward bound Colucci car when defendant's driver started and proceeded to make the turn to the westward and across the highway.  Stewart testified that before he started

to recross the road to his truck he saw no car coming, and that it was not until the tow-car had come within about a foot of his truck that he first saw the headlights of what proved to be the Colucci car approaching from the east and that it was then about two blocks distant. Toepfer's testimony was that before he started to drive across and until he was near the center of the road he looked in both directions and saw no lights of any car approaching from the east. Another witness, Mildred Soare, who was sitting in a car parked westerly of the gasoline station, testified that she saw the headlights of the Colucci car at the top of the descending grade which, as already noted, the evidence indicated was about seventeen hundred feet easterly from the point of collision, and that the tow-car then appeared to be already alongside the truck.

If the jury were at liberty to accept the version of the circumstances reflected by this evidence they reasonably could exculpate the driver of defendant's car from negligence in turning across the road when and in the manner he did. It appears from the memorandum granting the motion to set aside the verdict that the trial court's view was that this evidence could and should be dismissed from consideration as incredible, in that a finding that if the Colucci car was so far distant that its headlights were not visible, as Toepfer stated, when he started to make the turn, or was only at the top of the grade when Miss Soare first sighted the lights, the time intervening before the collision was so short as to import "an utterly incredible rate of speed" on the part of the Colucci car.

It is the province of the jury to determine the credibility to be attached to testimony and the weight to be given it. A party has the right to have the credibility of witnesses passed upon by the jury and their conclusions may not be disturbed "unless it is apparent

that they acted from prejudice, partiality, corruption or the like." *Press* v. *Connecticut Co.*, 95 Conn. 45, 47, 109 Atl. 295; *Lewis* v. *Healy*, 73 Conn. 136, 138, 46 Atl. 869; *Porcello* v. *Finnan*, 113 Conn. 730, 734, 156 Atl. 863; *Bergh* v. *Spivakowski*, 86 Conn. 98, 84 Atl. 329. However, the action of a jury may be as unreasonable, and as suggestive of being produced by improper influences, in passing upon the credibility of witnesses as in any other respect, and the operation of such influences may be manifested by the acceptance as credible and the giving of determining effect to evidence which is irreconcilable with, for example, the laws of mechanics or admitted or indubitably established physical facts. *Roma* v. *Thames River Specialties Co.*, 90 Conn. 18, 21, 96 Atl. 169. But unless the record discloses that, because of some such compelling reason, the jury could not fairly and reasonably have believed the testimony, and that, by reason of their acceptance of it as credible, the verdict was one which the jury might not reasonably reach, it may not properly be set aside. *Bergh* v. *Spivakowski, supra.*

We have studied the evidence in this case to ascertain whether the testimony of the witnesses above mentioned was so clearly incredible that to accord it weight should be taken as so indicating that the jury were actuated by improper motives in arriving at their verdict as to justify the trial court in setting it aside. There was testimony that the Colucci car was traveling rapidly and the jury might have reasonably inferred that this was so from the evidence that the impact of the light Chevrolet pushed the rear of the heavy tow-car around five or six feet, and thoroughly demolished the lighter car. The evidence as to the speed of the defendant's car in turning and crossing the road placed it at two or three miles per hour, and that it had nearly or quite come to a stop near the

truck before the collision occurred. Taking into consideration, also, the semicircular course pursued in crossing the road it is apparent that the Colucci car could have traveled a considerable distance after the defendant's car started to turn. The testimony of Stewart that when the tow-car had almost reached the front of his truck the lights of the Colucci car were yet distant a space which he estimated to be the length of two city blocks is uncontradicted, and no reason appears why the jury could not have accorded it credit.

It was not essential to a defendant's verdict that the jury find that at the time the tow-car started to turn the Colucci car was not yet in sight or was as far distant as the top of the grade seventeen hundred feet away. The tow-car was turning from a course in an easterly direction to one in a westerly direction. Its driver might reasonably have assumed that, so long as it was upon the southerly half of the highway, it was in no danger from traffic proceeding in a westerly direction and that the risk of collision with any car traveling westerly would only arise after the front of the tow-car passed the center of the highway. On the other hand, as soon as the tow-car had completed the turn and was headed in a westerly direction upon the north half of the highway, it would have been in a position such that any traffic coming from behind it and proceeding in that direction was under a duty to pass to its left. The defendant was entitled to a verdict unless the plaintiff sustained his burden of proving that at the time defendant's servant started to drive onto the north half of the road the Colucci car was so close that, as a reasonably prudent person, entitled to assume that Colucci himself would exercise reasonable care, he should have known that he had not sufficient opportunity, before the arrival of the Colucci car, to make the turn in safety. Therefore the jury might

have held that the plaintiff had failed to establish negligence on his part if they found that the Colucci car was a sufficient distance away to fulfil that test, even though they found that the latter was nearer when Miss Soare first saw its lights than it appeared to her to be and that its lights were actually in sight when Toepfer looked, if it was then far enough away so that, if he had seen them, he might reasonably have believed he had ample opportunity to make the turn. Or, considering the situation disclosed by the evidence from a somewhat different standpoint, the jury might have reasonably found that, at the moment of collision, the tow-car was entirely upon the north half of the road, in a somewhat diagonal direction to its center line, with its front opposite the front fender or hood of the van and only a foot or two from it. If they did find that to be the situation, the conclusion would reasonably follow that the tow-car could not complete its turn and that it had been brought practically to a stop, so that it might back up in order to complete the turn. If the jury believed, as it was open to them to do, that when the tow-car had reached this position the Colucci car was then the equivalent of two city blocks away, that, of itself, would be sufficient to support an inference that when the tow-car reached the center of the highway the Colucci car was so far distant that Toepfer could reasonably assume he had adequate time and opportunity to make the turn without danger of collision with the Colucci car, especially if the latter was operated, as he was entitled to assume it would be, with such care and caution as would be reasonable under the circumstances, and that Toepfer had been at worst guilty of a slight miscalculation as to his ability to make the turn without the necessity of backing his car. Therefore the jury, acting fairly and intelligently, might reasonably have reached the verdict

which they did, and to set it aside was not properly within the functions of the trial court. *Lewis* v. *Healy, supra,* p. 137; *Porcello* v. *Finnan, supra.*

There is error and the Superior Court is directed to enter judgment on the verdict for the defendant.

In this opinion the other judges concurred.