CHARLES TOTH *vs.* ALBERT PERRY ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued December 5th, 1935—decided January 8th, 1936.

*William Reeves,* with whom, on the brief, was *Arthur M. Comley,* for the appellants (defendants).

*John Keogh, Jr.,* for the appellee (plaintiff).

HAINES, J. A motion to set aside the verdict was based upon the contention that upon the law and the evidence, the plaintiff was guilty of contributory negligence, and the ruling of the trial court upon that claim is the only matter now sought to be reviewed. Such review requires us to give the evidence the most favorable construction in support of the verdict of which it is reasonably capable. It is at once apparent that

there is much that is contradictory in the testimony given by the witnesses upon some important features of the case, and it is necessary to bear in mind that the question of credibility is for the jury. If their conclusions are such as could have been reached by reasonable men acting impartially and without bias, they cannot be disturbed even though the court would, upon the same evidence, have reached a different conclusion.

We are satisfied that the jury could thus have found that this plaintiff was driving an automobile westerly from Bridgeport on the Boston Post Road so-called, on the night of October 10th, 1933. Seated at his right was a young man of his acquaintance, and to the right of the latter a young lady, while two other young ladies were in the rear seat. They had reached the village of Southport and were proceeding at twenty-five to thirty miles per hour on the right or northerly side of the road, with the headlights of the car in operation, when a collision took place with a truck owned by the defendant Golet, going in the opposite direction, and operated by his agent, the defendant Perry, resulting in the injuries to the plaintiff which are the subject of this action. Just beyond and ahead of the plaintiff when the collision occurred, the highway, which was of oil bound macadam forty feet wide with five foot shoulders, curved northward or to the plaintiff's right. There was no artificial light in this area and the night though clear, was dark. The surface was somewhat ripply or wavy and the plaintiff was watching the roadway ahead of his car. It was as the plaintiff's car approached this bend in the road that the two machines came together. There was evidence, though some of it was sharply contradicted, from which the jury were privileged to conclude that the defendant's truck, which consisted of a detachable cab and a

trailer, the latter loaded with nine tons of merchandise, had no headlights in operation and was in part on its left side of the center of the highway, cutting the corner at this bend of the road, and traveling fast; also that the trailer, at the moment of impact, was swinging somewhat so that it was further to the left than the cab itself. The left rear of the trailer and the left front of the plaintiff's car collided, breaking the left front wheel of the latter entirely off and forcing the front end of the car to its left and in part onto the south side of the center of the road. The truck continued several hundred feet after the collision and was stopped on its right-hand side of the road. Ahead of the truck as it cleared the bend, the road rises at a grade of about 6 per cent. for a distance of something more than eight hundred feet.

The defendants insist that the plaintiff was negligent in not sooner seeing the oncoming truck and in not taking those measures to avoid it that a reasonably prudent person would have taken, under the circumstances. The contention rests primarily on two questions of fact. It is claimed that the headlights of the truck were in operation and that the plaintiff did not see it until his car was within eight feet of it and so his car was not turned so quickly as it might have been. As to the first claim, as already indicated, the jury were privileged to conclude that the headlights of the truck were not in operation. As to the second, the plaintiff stated on cross-examination that "the first thing" he saw was "that black thing coming in front of me and then I pulled my car to the right and then I didn't—I was just knocked unconscious after that," and when asked how far away the first thing he saw, was, he answered that it was "about" eight feet. On re-cross-examination he said: "I saw a black thing coming in front of me, I couldn't tell you just when—how many

feet;" and that the thing, which was about eight feet away, was the back part of the trailer. He also said: "I don't know exactly how far the truck was away." Asked how he knew that the truck was cutting the curve, he said he saw the black thing in front of him, but "I don't know how far he was to me. I pulled to my right and he caught me on my front wheel." It is apparent that the plaintiff was somewhat confused when on the stand or at least decidedly hazy in his recollection of what occurred during those few seconds. It is matter of common knowledge that a sudden blow upon the head causing concussion and unconsciousness often has the effect of destroying more or less completely, a clear recollection thereafter of the events immediatley preceding the blow, and the jury might well have considered the testimony of the plaintiff in the light of this fact. They were justified in looking elsewhere for evidence as to when the plaintiff first saw the truck and turned his car and this is to be found in the testimony of the man who sat next to him and who was not injured.

One of the unqualified statements the plaintiff did make, and several times repeated, was that when he saw the truck he pulled his own car to his right. On this point his companion said that he saw the "dark object" coming and that he saw it was a truck without lights, when it was about as far away as a red building which he could see from the witness stand and which counsel estimated to be about one hundred and fifty feet and that the truck was about one-half that distance away when the plaintiff pulled his car over to the right—"He swung over to the right all of a sudden."

Under conditions of this character, absolute accuracy of statement as to distances cannot reasonably be expected. Even if the jury were in doubt as to the

exact distance of the plaintiff's car from the truck when the plaintiff pulled to the right, they could reasonably have concluded that the plaintiff was much nearer than seventy-five feet. If there were no lights on the truck and the roadway was dark, and the truck was partly on the plaintiff's side of the road cutting across the bend in the road, we cannot say as matter of law that it was negligence for the plaintiff not to have seen it sooner than he did. It was his right to assume that an approaching vehicle would display lights and remain on its own side of the road. The plaintiff's own lights as he approached the curve would naturally have been projected to the left of the curve and thus would not have picked up the truck as soon as if it were approaching on a straight line. It could reasonably have been found also that in pulling to the right, the plaintiff would have cleared the truck had not the trailer swung to the left as the truck was suddenly pulled to its own right. That the plaintiff was not negligent was not an unreasonable conclusion.

The jury were justified in reaching and the trial court in sustaining, the verdict rendered.

There is no error.

In this opinion the other judges concurred.