DONALD HAGSTROM *v.* GEORGE SARGENT ET AL.

BERNICE M. SARGENT *v.* CLARENCE MCCARRON ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, JS.

Argued January 9—decided February 27, 1951

*Milton Krevolin,* with whom were *A. A. Giddon* and, on the brief, *Morton E. Cole* and *Cyril Cole,* for the appellant (plaintiff and defendant Hagstrom).

*J. Ronald Regnier,* for the appellees (defendants and plaintiff).

BROWN, C. J.   These actions to recover for personal injuries resulting from the collision of two automo-

biles proceeding in opposite directions were tried together. In the first, Hagstrom, a passenger in one of the cars, a Ford, sued George Sargent, the owner, and Bernice Sargent, the driver, of the other car, a Chevrolet. In the second, Bernice Sargent sued Hagstrom and McCarron, the driver of the Ford, alleging that they were engaged in a joint venture. The jury rendered a verdict for Hagstrom as plaintiff and a verdict for him and McCarron as defendants. The court set aside both verdicts and Hagstrom has appealed in each case. No claim is made that the issue as to joint venture is involved in the determination of either appeal.

Rye Street in South Windsor runs in an easterly and westerly direction. On the afternoon of August 22, 1941, which was a bright fair day, McCarron, with Hagstrom as a passenger, was driving his Ford westerly along Rye Street and Bernice Sargent was driving the Chevrolet owned by her husband along the street in the opposite direction. Upon a section of the road which is straight and level for several hundred feet the cars were in collision at a point near the middle of the traveled way, which was seventeen and one-half feet wide. The Ford came to rest in a ditch on the north side of the road and the Chevrolet remained on the road, but crosswise of it, headed north, with about a third of the car north of the middle of the highway. The front, particularly the left front portion, of each car was badly damaged by the impact. No detailed recital of the evidence is necessary to present the question determinative of the appeals. The testimony of the driver and passenger of each car was that their vehicle at all times kept to its extreme right side of the road and was proceeding at a moderate speed, which was reduced almost to a stop just before the collision, and that the other car, as it approached, either was on its left side of the road or pro-

gressed on a diagonal course to its left across the road at a high rate of speed which continued until the impact occurred.

In addition to this conflicting direct testimony as to how the collision happened, there was evidence of certain physical facts. Besides that of the location and condition of the two cars after the accident, there was undisputed evidence of a mark some sixty-four feet long made by the right wheel or wheels of the Chevrolet. This was parallel to and one foot five inches north of the south edge of the road, except that near its easterly end it turned toward the north on an angle and terminated at a point three feet five inches north of the southerly edge of the road and a short distance west of where the rear left wheel of the Chevrolet stood after the accident. The undisputed evidence also established that there was underfender dirt, glass and debris in the middle and to the north of the middle of the road. There was no evidence of any wheel marks of the Ford car. In its memorandum of decision ordering the verdicts set aside, the court made mention of the conflict in the direct testimony as to how the collision occurred but, referring to the physical facts recited above, concluded that notwithstanding this conflict "the verdict could not have been reasonably reached and is manifestly unjust and is so palpably against the evidence as to indicate that the jury must have made some mistake in the application of legal principles or were influenced by lack of knowledge or understanding and that the jury must have given determining effect to evidence which is irreconcilable with the admitted and indubitably established physical facts."

The court relied upon the principle that it is "the court's duty to set aside the verdict if its manifest injustice [is] so plain and palpable as to justify the sus-

picion that the jury or some of its members were influenced by prejudice, corruption or partiality. . . . And this is true even if the evidence was conflicting, and there was direct evidence in favor of the plaintiff, who prevailed with the jury." *Roma* v. *Thames River Specialties Co.*, 90 Conn. 18, 19, 96 A. 169. This rule applies when "it is apparent from physical facts or other evidence compelling belief that the jury were swayed by improper motives." *Joanis* v. *Engstrom*, 135 Conn. 248, 251, 63 A. 2d 151. Well established as this principle is, we have repeatedly given expression to the caution to be exercised in its application, to avoid infringing upon the jury's prerogative of determining the issues of fact. So we have said, "[U]nless the record discloses that, because of some such compelling reason, the jury could not fairly and reasonably have believed the testimony, and that, by reason of their acceptance of it as credible, the verdict was one which the jury might not reasonably reach, it may not properly be set aside." *Anderson* v. *Colucci*, 119 Conn. 241, 245, 175 A. 681. And more recently we stated, with reference to the effect of physical facts, that, to control, they "must be so indisputable that contrary testimony must be either intentionally or unintentionally untrue and there is no real question of evidence concerning which reasonable minds could reasonably differ." *Lessow* v. *Sherry*, 133 Conn. 350, 354, 51 A. 2d 49; *DeLahunta* v. *Waterbury*, 134 Conn. 630, 635, 59 A. 2d 800.

The decisive question then, boils down to this: Do the physical facts compel the conclusion that the driver of the Chevrolet continued to guide it on its course parallel with the south edge of the road until it was contacted by the Ford at a point south of the middle line and dragged toward the northwest causing the deflection in the wheel mark, as argued by her counsel,

or could the jury upon all of the evidence have reasonably concluded that the change in direction of the wheel mark was due to her turning the car to the left, with the result that its front end passed beyond the middle line and so caused the collision on what was her wrong side of the road? The precise and detailed testimony of the two occupants of the Ford car, both of whom were unconscious in the hospital for days as a result of the collision, relative to the speed, course and exact location of each car during the final second or two preceding the crash is strongly suggestive of a calculated account of what might have happened rather than an actual recollection of what did in fact occur. While the court might well have disbelieved this testimony, we cannot say as a matter of law that the jury, upon all of the evidence in the present case, were unwarranted in according any credence to it. See *Toth* v. *Perry*, 120 Conn. 680, 681, 182 A. 464. Nor can we say, particularly in view of the absence of evidence that there was any dirt or debris south of the middle line, that the wheel mark of the Chevrolet must be accorded the significance claimed by counsel for the Sargents. Our conclusion is fortified by the further fact that there was nothing in the nature of the wheel mark at the point where the change in direction occurred to indicate that the car had been forced or dragged to its left by an impact rather than guided in that direction by a turn of the steering wheel. Under the controlling principles quoted above, the trial court was not warranted in setting the verdicts aside.

There is error, and the cases are remanded with direction to render judgment upon the verdicts.

In this opinion JENNINGS, INGLIS and O'SULLIVAN, Js., concurred.

BALDWIN, J. (dissenting). In ruling upon a motion

to set aside a verdict the trial court is called upon to exercise a legal discretion necessary to and inherent in the long-recognized function of a judge presiding at a jury trial. *Howe* v. *Raymond,* 74 Conn. 68, 71, 49 A. 854; *Cables* v. *Bristol Water Co.,* 86 Conn. 223, 225, 84 A. 928. On an appeal from that ruling to this court, "We are reviewing the action of the trial court . . . to determine whether its discretion was abused rather than the verdict itself." *Joanis* v. *Engstrom,* 135 Conn. 248, 251, 63 A. 2d 151; Conn. App. Proc. § 114. The trial court set aside the verdicts in the present cases because "the jury must have given determining effect to evidence which [was] irreconcilable with the admitted and indubitably established physical facts." The trial court observed the witnesses and heard the testimony, including the explanations of the map and photographs presented as exhibits. It therefore had a better opportunity of evaluating all the evidence than is accorded to us by the record. *Masi* v. *General Ice Cream Corporation,* 120 Conn. 259, 262, 180 A. 455. In considering, upon the record, whether there was an abuse of discretion, we should give great weight to the trial court's opinion and make every presumption in favor of its correctness. *Roma* v. *Thames River Specialties Co.,* 90 Conn. 18, 20, 96 A. 169; *Dudas* v. *Ward Baking Co.,* 104 Conn. 516, 518, 133 A. 591; *Joanis* v. *Engstrom,* supra, 253. I think that the court did not abuse its discretion and that there was no error.