## STEPHANIE ALLEN *v.* LOUIS A. GIULIANO

WYNNE, C. J., BALDWIN, DALY, KING and MURPHY, Js.

Argued October 2—decided October 29, 1957

*Walter A. Mulvihill*, with whom was *Thomas P. Keyes, Jr.*, for the appellant (defendant).

*David Goldstein*, with whom was *C. Harold Schwartz*, for the appellee (plaintiff).

MURPHY, J. The plaintiff brought this action to recover damages alleged to have been sustained as a consequence of malpractice on the part of the defendant and recovered a verdict of $25,000. The motion of the defendant for a directed verdict was denied. He subsequently moved for judgment notwithstanding the verdict and in the alternative that the verdict be set aside as contrary to the law and the evidence and excessive. The court denied the motion for judgment notwithstanding the verdict and ordered a remittitur of $5000, which the plaintiff filed. The defendant has appealed from the judgment. The principal question presented for review is whether there was sufficient expert evidence of malpractice to justify the submission of the case to the jury. The other questions relate to the admission of evidence, the court's charge to the jury and the amount of the verdict after the remittitur was filed.

The following facts are not in dispute: The plaintiff, an eleven-year-old schoolgirl, fractured her right leg. The defendant, her family physician, set the leg and applied a plaster cast extending from above the knee to the toes. On May 17, 1955, the defendant removed the cast, using an electric oscillating cast cutter. In doing so, he lacerated the plaintiff's leg in three places.

The plaintiff did not offer, in accordance with the generally accepted manner of proving malpractice, any testimony by an expert medical witness cate-

gorically stating that in his opinion the operation of the cast cutter by the defendant was negligent or unskilful. Where the lack of care and skill is so obvious that a conclusion of negligence must be drawn, an exception to the rule prevails. It is unnecessary to determine whether this case fell within the exception, since there was expert testimony from which the jury could have found the defendant negligent. *Ardoline* v. *Keegan,* 140 Conn. 552, 556, 102 A.2d 352; *Frogge* v. *Shugrue,* 126 Conn. 608, 612, 13 A.2d 503; *Snyder* v. *Pantaleo,* 143 Conn. 290, 294, 122 A.2d 21. The defendant himself admitted upon cross-examination, after some hedging, that the cutter, properly used, should not have caused the lacerations. In addition, Dr. Eugene C. Beck, who treated the wounds after the plaintiff had been removed from the defendant's care, testified that the cutter, used with the care, skill and diligence which physicians in the same general neighborhood and in the same general line of practice ordinarily possess and exercise in similar cases, should not cut the skin. This was sufficient, under the rule enunciated in *Slimak* v. *Foster,* 106 Conn. 366, 370, 138 A. 153, and reiterated in *Snyder* v. *Pantaleo,* supra, to support a verdict for the plaintiff.

The defendant filed no requests to charge, but he took two exceptions to the charge as given. One of these dealt with the court's reference to the testimony of the two physicians as experts in their line. The charge with reference to this matter was correct and requires no discussion in addition to that already accorded the subject in this opinion.

In his closing argument, the plaintiff's counsel called attention to the defendant's failure to call any medical witnesses in his own behalf. The defendant objected. The court thereafter correctly

charged upon the inference to be drawn from the failure of a party to call any particular witness. As given originally, the charge applied to both parties. The court then stressed the fact that the burden of proof was upon the plaintiff and that any inference that might be drawn from the failure of the defendant to produce medical witnesses did not relieve the plaintiff of the burden or shift it to the defendant. The charge was correct in law, adapted to the issues and sufficient for the guidance of the jury. *Steinecke* v. *Medalie,* 139 Conn. 152, 157, 90 A.2d 875; *Castaldo* v. *D'Eramo,* 140 Conn. 88, 94, 98 A.2d 664; *Balla* v. *Lonergan,* 143 Conn. 197, 200, 120 A.2d 705.

Any merit to the exception by the defendant to Dr. Beck's testimony on direct examination that the cutter should not cut the skin if reasonable care is used in removing the cast was nullified by subsequent testimony of the same witness upon the same subject matter to which no objection was made.

The remaining assignment of error relates to the defendant's claim that the verdict is excessive though it was reduced to $20,000. From the evidence, the jury could have found that, as a result of the defendant's negligent use of the cast cutter, the plaintiff sustained three separate and distinct lacerations upon the fore part of her leg. The first was just below the kneecap, extending one and one-eighth inches along the mid-line. The second and more serious wound was about six inches in length along the mid-line of the shin, exposing the bone and cutting into the periosteum. The third was about one inch long on the upper aspect of the foot between the second and third metatarsal bones. The plaintiff told the defendant that he was hurting her when the cutter reached the area of the first laceration.

The defendant continued to cut the cast, and the plaintiff increased her complaints of pain and cried throughout the one-half hour operation. When the cast was removed, it was bloody. The wound was open and messy and contained pieces of plaster of Paris from the cast and cotton from the padding that had been used to protect the leg and keep the cast from touching the skin. The defendant used fourteen sutures in the two lower wounds. The leg became swollen, inflamed and red; an infection developed and the wound completely broke down, requiring removal of the sutures. Dr. Beck treated the plaintiff thirty-five times from May 23 through August 22, 1955, and thereafter saw her several more times, for observation and x-rays, until November 23, 1955. The plaintiff was nervous and upset. She cried frequently. She worried that her leg would be scarred. For two or three weeks she could not walk and had to be carried. She lost three weeks of school. She underwent considerable pain and suffering. The wounds have healed leaving permanent scars.

The first scar is just below the kneecap. It is one and one-eighth inches long and one-quarter inch wide. The most disfiguring scar is six inches long down the front of the shin. It is five-eighths of an inch wide at the upper third and one and one-half inches wide in the middle and tapers down to three-quarters of an inch. It is irregular, permanent and visible. The lower portion has developed a thick keloid formation of brownish discoloration. The scar on the top of the foot is five-eighths of an inch long and three-quarters of an inch wide. The plaintiff cannot wear a shoe with straps or laces because they irritate the scar. The appearance of the largest scar might be improved by

plastic surgery, but the scar will be permanent.

In addition, the jury could have found that the plaintiff's physical activities have been severely curtailed. She has had to give up ballet dancing and athletic games at school and home. She has withdrawn from the normal social and group activities at home, church and school with which she had been prominently identified. Modern hosiery does not conceal the scars. The plaintiff is extremely conscious of them and fearful that her activities might produce trauma in the area and further aggravate the condition.

The verdict was returned on June 27, 1956. At that time the plaintiff was twelve years of age. She had a life expectancy of a fraction under sixty years. The special damages, including a minimum estimate for plastic repair, are slightly in excess of $1000. Both court and jury saw the visible scars. They had the opportunity of visualizing and appraising the damage that had been caused to this youngster who is fearful of the future appearance of these scars. *Figlar* v. *Gordon,* 133 Conn. 577, 585, 53 A.2d 645.

The court in reducing the verdict by $5000 went as far as it believed it reasonably could without trespassing upon the prerogatives of the jury. Its action is entitled to full support unless it abused its discretion. *Sheiman* v. *Sheiman,* 143 Conn. 222, 223, 121 A.2d 285; *Brower* v. *Perkins,* 135 Conn. 675, 681, 68 A.2d 146. In the ordering of a remittitur, a fair appraisal of compensatory damages, and not the limit of legitimate generosity, is the rule. *Brower* v. *Perkins,* supra; *Rosa* v. *American Oil Co.,* 129 Conn. 585, 589, 30 A.2d 385. The verdict as reduced falls within the necessarily flexible limits of fair and reasonable compensation, and this court should not interfere with it. *Pierce* v. *Albanese,* 144 Conn. 241,

263, 129 A.2d 606; *Gorczyca* v. *New York, N.H. & H.R. Co.,* 141 Conn. 701, 703, 109 A.2d 589, and cases cited.

There is no error.

In this opinion the other judges concurred.