WILLIAM BUTLER, ADMINISTRATOR (ESTATE OF PIERRE
F. BALCH) *v.* JAMES STECK, SR., ET AL.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued December 3, 1958—decided January 20, 1959

*William P. Aspell,* with whom was *George Muir,*
**for** the appellants (defendants Steck).

*Maurice Gersten,* with whom were *Harry Cooper* and, on the brief, *William Butler,* for the appellee (plaintiff).

BALDWIN, J. The plaintiff's decedent received fatal injuries on May 2, 1957, when a motorcycle he was riding collided with the automobile of the named defendant, which was being driven by his son, the defendant James Steck, Jr. The present action under the wrongful death statute was tried to a jury. The jury returned a verdict for $6595.40 against the defendants Steck. The trial court, on the plaintiff's motion, set this verdict aside as inadequate. The defendants Steck have appealed. The only issue is whether the court's action was erroneous.

Our wrongful death statute allows the recovery of "just damages together with the cost of reasonably necessary medical, hospital and nursing services, and including funeral expenses." Rev. 1958, § 52-555. We discussed our rule for measuring damages resulting from death in *Chase* v. *Fitzgerald,* 132 Conn. 461, 469, 45 A.2d 789, and we have refined it in subsequent decisions. *Lengel* v. *New Haven Gas Light Co.,* 142 Conn. 70, 77, 111 A.2d 547; *McKirdy* v. *Cascio,* 142 Conn. 80, 84, 111 A.2d 555; *Fairbanks* v. *State,* 143 Conn. 653, 658, 124 A.2d 893; and *Floyd* v. *Fruit Industries, Inc.,* 144 Conn. 659, 669, 136 A.2d 918. We recapitulate from these cases the elements which enter into an award of damages for wrongful death. "Damages for wrongful death, as such, are allowed as compensation for the destruction of the decedent's capacity to carry on life's activities, including his capacity to earn money, as he would have if he had not been killed. . . . In the case of one who is gainfully employed . . . the destruction of earning capacity may well be the principal element of re-

covery . . . . But . . . damages . . . are not restricted to those arising from the mere destruction of earning capacity. Some damages are recoverable for death itself, even though instantaneous . . . ." *Floyd* v. *Fruit Industries, Inc.,* supra. If death is not instantaneous, the award may include an allowance for pain and suffering. *Chase* v. *Fitzgerald,* supra, 468; see *Reynolds* v. *Maisto,* 113 Conn. 405, 406, 155 A. 504, and cases cited. Then too, there are the special damages enumerated in the statute: "reasonably necessary medical, hospital and nursing services, and . . . funeral expenses." The special damages in the present case amounted to $1595.40. Since the verdict was for $6595.40, it is proper to assume, as the trial court did, that the award for all the other elements enumerated heretofore was $5000. No exception was taken to the charge on the matter of damages, and we must assume that it was an accurate and adequate statement of the law. *Fairbanks* v. *State,* supra.

It is true that the assessment of damages for wrongful death involves, at best, imponderables. The rule is extremely flexible and as applied by juries often produces seemingly irreconcilable results. The problem is one "peculiarly appropriate for a jury's deliberation in which twelve individual judgments are set to the task of estimation, and the verdict is a composite of the views of the twelve." *Lane* v. *United Electric Light & Water Co.,* 90 Conn. 35, 37, 96 A. 155. Trial by jury, however, is a trial in the presence and under the supervision of a judge empowered to instruct the jury on the law and to advise them on the facts, and, except on an acquittal of a criminal charge, to set aside their verdict, if it is, in his opinion, against the law or the evidence. *Howe* v. *Raymond,* 74 Conn. 68, 71, 49 A. 854. "In

passing upon a motion to set aside a verdict, the trial judge must do just what every juror ought to do in arriving at a verdict. The juror must use all his experience, his knowledge of human nature, his knowledge of human events, past and present, his knowledge of the motives which influence and control human action, and test the evidence in the case according to such knowledge and render his verdict accordingly. . . . The trial judge in considering the verdict must do the same . . . and if, in the exercise of all his knowledge from this source, he finds the verdict to be so clearly against the weight of the evidence in the case as to indicate that the jury did not correctly apply the law to the facts in evidence in the case, or were governed by ignorance, prejudice, corruption or partiality, then it is his duty to set aside that verdict and to grant a new trial." Ibid.; *Cables* v. *Bristol Water Co.*, 86 Conn. 223, 224, 84 A. 928; *Capital Traction Co.* v. *Hof*, 174 U.S. 1, 13, 19 S. Ct. 580, 43 L. Ed. 873; see *Bissell* v. *Dickerson*, 64 Conn. 61, 29 A. 226. The trial judge has a broad legal discretion and his action will not be disturbed unless there is a clear abuse. *Allen* v. *Giuliano*, 144 Conn. 573, 578, 135 A.2d 904; *Slabinski* v. *Dix*, 138 Conn. 625, 628, 88 A.2d 115; *Brower* v. *Perkins*, 135 Conn. 675, 681, 68 A.2d 146; *Roma* v. *Thames River Specialties Co.*, 90 Conn. 18, 20, 96 A. 169; *Loomis* v. *Perkins*, 70 Conn. 444, 447, 39 A. 797; Maltbie, Conn. App. Proc., §§ 187, 196.

In a memorandum of decision on the motion to set aside the verdict, the trial court recited in considerable detail the facts established by the evidence relating to damages. These facts can be briefly stated as follows. The decedent was a young man, twenty-four years old and in good health. He had graduated from high school, served in the armed

forces and been honorably discharged, and had in prospect employment which would pay him $1.53 an hour as a learner and ultimately $95 to $100 a week as a mechanic. His interests and abilities were primarily in mechanics. During his high school years he had worked part time for a television establishment. He had also been employed by a general contractor. His employers described him as a trustworthy and reliable worker. His absorbing interest was motorcycles and he intended to enter the business of selling and repairing them with his younger brother after the latter had finished his tour of duty in the armed forces. The life expectancy of the decedent was, actuarially, about forty-six years. He was injured about 5:45 p.m. and died about 8:10 p.m. on the same day. There was credible evidence that during some of this time he consciously suffered excruciating pain.

The jury are the judge of the credibility of witnesses and may accept or reject their testimony. A jury cannot, however, disregard evidence unless there is good reason to conclude that it is not credible. *Roma* v. *Thames River Specialties Co.*, supra; *Baril* v. *New York, N.H. & H.R. Co.*, 90 Conn. 74, 76, 96 A. 164; *Dudas* v. *Ward Baking Co.*, 104 Conn. 516, 518, 133 A. 591; *Pappaceno* v. *Picknelly*, 135 Conn. 660, 662, 68 A.2d 117. The only practical test to apply to this verdict is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury mistook the law or were influenced by partiality, prejudice, mistake or corruption. *McKirdy* v. *Cascio*, 142 Conn. 80, 86, 111 A.2d 555, and cases cited; *Mulcahy* v. *Larson*, 130 Conn. 112, 114, 32 A.2d 161; Maltbie, Conn. App. Proc., § 197.

This test must be applied in the first instance by the trial court. On appeal, we are reviewing primarily the action of the trial court. *Joanis* v. *Engstrom,* 135 Conn. 248, 251, 63 A.2d 151; Maltbie, op. cit., §§ 187, 196, 197. We determine upon the evidence whether the trial court, in exercising a large discretion, could legally act as it did, not whether we, upon the same evidence, would take the same action. From the vantage point of the trial bench, a presiding judge can sense the atmosphere of a trial and can apprehend far better than we can, upon the printed record, what factors, if any, could have improperly influenced the jury. *Zullo* v. *Zullo,* 138 Conn. 712, 715, 89 A.2d 216; *State* v. *Hayes,* 127 Conn. 543, 554, 18 A.2d 895; *Loomis* v. *Perkins,* 70 Conn. 444, 447, 39 A. 797. The memorandum of decision shows the firm conviction of the trial court that the verdict was inadequate and that it was reached by considerations not properly applicable in the awarding of damages. See *Levy* v. *Bromberg,* 108 Conn. 202, 204, 142 A. 836. The evidence does not demonstrate the clear abuse of discretion which would warrant a reversal of the action of the trial court in setting aside the verdict.

There is no error.

In this opinion DALY, C. J., and MELLITZ, J., concurred.

KING, J. (dissenting). I do not disagree with the basic statements of the applicable fundamental principles of law as given in the majority opinion. My disagreement is with their application to this case. I think the verdict of the jury, which in effect allowed but $5000 for post-mortem damages, while low, was reasonable on a permissible view of the evidence. The court's memorandum of decision

granting the motion to set aside the verdict does not suggest that anything occurred during the trial which was calculated to arouse passion, prejudice or bias in the jury, nor that the charge was incorrect. See cases such as *Ardoline* v. *Keegan,* 140 Conn. 552, 555, 102 A.2d 352. The only substantial reasons advanced by the court for its action in setting aside the verdict were, first, that the defendant James Steck, Jr., made a fine appearance and the jury must have been unduly moved by him, and second, that the jury must have failed to understand the charge as to proximate cause in the law of damages. Nothing, except the bare amount of the verdict, is cited in support of either theory.

The burden of proof of damages in any case is, as it was here, on the plaintiff. In a wrongful death action, such as this, the plaintiff is of course entitled to recover some post-mortem damages for the death itself. *Floyd* v. *Fruit Industries, Inc.,* 144 Conn. 659, 668, 136 A.2d 918. But since under the modern statement of our rule post-mortem damages are allowed as compensation for the destruction of the decedent's capacity to carry on life's activities, including his capacity to earn money, a basic issue on which the plaintiff has the burden of proof is to what extent the decedent would probably have been able to carry on life's activities but for his death.

Under the accepted and best method of proceeding in wrongful death cases, a plaintiff asks the court to take judicial notice of the actuarial life expectancy of the decedent and also offers any available evidence tending to prove that the decedent's health and activities were such as to make it likely that his actual life expectancy would equal or exceed his actuarial life expectancy. *Sims* v. *Smith,* 115 Conn. 279, 286. 161 A. 239; *Miner* v. *McKay,* 145 Conn. 622,

624, 145 A.2d 758. But this is not all. In a proper charge in a case of this character, the jury should be told, in substance, that in the determination of the probable duration of the decedent's life and the extent of his activities during that period, the expectancy shown in the mortality tables may well be qualified in the judgment of the jury by the physical condition and surroundings of the decedent and the natural incidents of life which in the normal process of existence might be expected to reduce the extent of his activities, including his aggregate earning capacity. *Sims* v. *Smith,* supra, 285. "Accident, sickness, disability, old age and the like, are such common incidents of life that they are to be expected in greater or less measure by all men, and certain of them especially by men in certain employments or environments. Any true estimate of what a given man may be expected to do in the future, especially in the way of earning, must take note of them, and one which ignores them is not impartial." *Lane* v. *United Electric Light & Water Co.,* 90 Conn. 35, 39, 96 A. 155; *Sims* v. *Smith,* supra. A refusal so to charge, even in a case involving, not death, but a claimed permanent disability resulting in an impairment of earning capacity, has been held reversible error. *Losier* v. *Consumers Petroleum Corporation,* 131 Conn. 161, 166, 38 A.2d 670.

The ability to carry on life's activities is subject to complete destruction by death and to curtailment in varying amount by any nonfatal disabling injury. Thus the plaintiff has the burden of proving two factors. The first is the probable actual life expectancy of the decedent, as distinguished from the actuarial life expectancy of one of his age. The second is the probable extent to which he would have been able to carry on life's activities during his probable ac-

tual life expectancy. The first is affected by the risk of death prior to the expiration of the actuarial life expectancy, while the second is affected by the risk and extent of any disability arising prior to the expiration of the probable actual life expectancy. As in the case of most of the other elements which the jury must consider in making an award of post-mortem damages, exact proof is impossible. *Floyd* v. *Fruit Industries, Inc.,* 144 Conn. 659, 675, 136 A.2d 918. All that can be required is proof of reasonable probabilities. But this requires something more than proof of the mere fact that the injured party died, and at a given age. *O'Connor* v. *Zavaritis,* 95 Conn. 111, 117, 110 A. 878. In determining either of the foregoing factors under our rule, the jury must consider not only a decedent's state of health but also the hazards of injury or death incident to his activities, whether these are recreational or vocational.

Here there was abundant credible evidence that the decedent had engaged in motorboat racing; that one of his favorite recreations was riding a motorcycle; that he hoped and expected to engage in the sale and repair of motorcycles as an occupation; that he had participated in motorcycle "scramble" races and had, until it was canceled, expected to take part in one to be held on the very day on which he was killed; and that in such a race the objective is to operate the motorcycle over a rough course with sharp turns as fast as possible and still stay on the vehicle. From all this, the jury might reasonably have believed that there was such a risk of death or disabling injury from the probable activities of the decedent that they could not find that the plaintiff had sustained his burden of proving (a) that the decedent had a probable actual expectancy of more

than a few years or (b) that he would be likely to escape, for more than a few years, a disabling injury materially affecting his ability to carry on life's activities.

It is imperative to keep in mind that it was not the burden of the defendant to prove, or even to offer evidence tending to prove, that motorboat racing or motorcycle riding or racing was dangerous, nor was it necessary that the jury so find as a proven fact. See 6 Wigmore, Evidence (3d Ed.) § 1698, and cases cited. But it was the duty of the jury to consider the evidence as to these activities, and if they did so, they might reasonably fail to find that the plaintiff had proved that the decedent had an actual life expectancy approaching the normal or actuarial expectancy for one of his age and health or would probably have escaped a disabling injury during a normal expectancy. *Lane* v. *United Electric Light & Water Co.,* 90 Conn. 35, 39, 96 A. 155; *Donoghue* v. *Smith,* 114 Conn. 64, 66, 157 A. 415.

A further consideration which may well have properly influenced the jury is the fact that the postmortem damages, at least as far as the element of destruction of earning capacity was concerned, were in compensation for losses which would occur from time to time during the decedent's probable lifetime. In such a situation, "due allowance . . . [must be] made for the anticipation of these . . . [losses] by force of a judgment which was payable immediately." *Nelson* v. *Branford Lighting & Water Co.,* 75 Conn. 548, 553, 54 A. 303. In other words, the jury must, as best they could, discount to its present fair value any compensation made for loss of future earnings. *Chase* v. *Fitzgerald,* 132 Conn. 461, 469, 45 A.2d 789. We must assume that the charge correctly instructed the jury on this point and that they followed it.

These considerations, even without other less important ones which I shall not mention, seem to me adequate to sustain the verdict of the jury as a reasonable result reached on a permissible view of the evidence. If this is correct, then the verdict should stand even though the jury awarded less damages than the court would have awarded had it tried the case without a jury. While the verdict is certainly low, it was substantial, and I do not feel that the trial court had any legal basis for setting it aside or any legal right so to do. "It must always be borne in mind that litigants have a constitutional right to have issues of fact decided by the jury and not by the court." *Ardoline* v. *Keegan,* 140 Conn. 552, 555, 102 A.2d 352. "One obviously immovable limitation on the legal discretion of the court . . . [to set aside a verdict in a death case] is the constitutional right of trial by jury, which in a proper case includes the right to have issues of fact, as to the determination of which there is room for a reasonable difference of opinion among fair-minded men, passed upon by the jury and not by the court." *Robinson* v. *Backes,* 91 Conn. 457, 460, 99 A. 1057; *Schlag* v. *Paffney,* 103 Conn. 683, 685, 131 A. 420.

I think the case should be remanded for the rendition of judgment on the verdict.

In this opinion MURPHY, J., concurred.