JUDITH MARIN ET AL. *v.* RITA SILVA ET AL.

ALCORN, HOUSE, COTTER, THIM and RYAN, Js.

Argued March 6—decided April 2, 1968

*Harry L. Nair,* with whom was *George Muir,* for the appellants (defendants).

*William F. Gallagher,* with whom were *Bernard Poliner* and, on the brief, *Cyril Cole,* for the appellee (named plaintiff).

ALCORN, J. This action was brought by the operator of a motorcycle and his passenger against both the owner and the operator of an automobile which collided with the motorcycle. The named plaintiff was injured when she was thrown from the motorcycle on which she was the passenger. A jury awarded her $3000 in damages, and the plaintiffs moved, under § 52-228b of the General Statutes, to set aside the verdict on the ground that it was inadequate. The court set the verdict aside and ordered a new trial, limited to the question of damages, unless the parties accepted an addition to the verdict for the named plaintiff in the amount of $2700. The defendants have appealed. No issue is raised over the verdict in the defendants' favor against the plaintiff operator of the motorcycle.

The defendants' claims are, in substance, that the court should not have set the verdict aside as inadequate, that the court invaded the defendants' right to a jury trial by ordering the acceptance of an additional amount as an alternative to a new trial

limited to the issue of damages, and that General Statutes § 52-228b violates the right to a trial by jury guaranteed by article first, § 19, of the constitution of Connecticut.

We conclude that the first claim of the defendants, which they assert to be their principal one, is conclusive of the appeal, and we express no opinion concerning the form or substance of the order of the trial court.

The question presented by the first claim of error is whether the court abused its discretion in setting aside the verdict. *Hook* v. *Dubuque,* 153 Conn. 113, 114, 214 A.2d 376; *Prosser* v. *Richman,* 133 Conn. 253, 256, 50 A.2d 85. We need not restate the considerations underlying that question which are so clearly set forth in *Desmarais* v. *Pinto,* 147 Conn. 109, 110, 157 A.2d 596. The ultimate test is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption. *Hook* v. *Dubuque,* supra, 115; *Sheiman* v. *Sheiman,* 143 Conn. 222, 223, 121 A.2d 285. There is no claim that any incident occurred during the trial to influence the jury against the named plaintiff. *Lupak* v. *Karalekas,* 147 Conn. 432, 435, 162 A.2d 180.

Although great weight should be given to the action of the trial court and the presumption is that a verdict is set aside only for good and sufficient reason, the record must support that presumption and indicate that the verdict demonstrates more than poor judgment on the part of the jury. *Burns* v. *Metropolitan Distributors,* 130 Conn. 226, 228, 33 A.2d 131.

The collision in which the named plaintiff, hereinafter called the plaintiff, was injured occurred on August 24, 1961. She was thrown from the rear seat of the motorcycle, fractured her left lower leg and ankle and sustained multiple abrasions, scratches and a cut on her right thigh which left a scar. All injuries healed normally and well, but the plaintiff claimed, at the trial in November, 1966, still to have some discomfort from excessive walking or climbing stairs which was accounted a 10 percent permanent partial disability of the lower left leg. She was hospitalized for eleven days, her left leg was in a cast for three months, and she used crutches for about five months. At the time of her injury she was about twenty years old and was about four and one-half months pregnant. The accident did not affect her pregnancy or the child who was born in January, 1962.

The court's memorandum of decision indicates that it concluded that the jury had found the plaintiff's hospital and medical bills to be about $750 and her loss of income from employment to be about $450. Although there was evidence of these amounts and no serious controversy over the hospital and medical expense, there was a reasonable basis for the jury to conclude that there was no loss of earning capacity as a result of the plaintiff's injuries. Her employment in the past had been sporadic. She testified that she had quit her most recent employment a week before her injury, that she would have been unable to work more than another two months in any event owing to her pregnancy, and that she could not have worked for a period of six weeks after the birth of the baby. She did go to work in March, 1962, but was a housewife at the time of trial.

The extent to which the jury found the plaintiff's

evidence on this and other matters to be credible is, of course, unknown. Although the verdict is low, it is not so manifestly unjust or so shocking to the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption. *Cappella* v. *New York, N.H. & H.R. Co.,* 154 Conn. 410, 415, 226 A.2d 394; *Carey* v. *Burgess,* 150 Conn. 567, 568, 192 A.2d 43.

Consequently, we conclude that the court erred in setting aside the verdict. This conclusion makes it unnecessary to consider the other assignments of error.

There is error and the case is remanded with direction to render judgment on the verdict.

In this opinion HOUSE, COTTER and THIM, Js., concurred.

RYAN, J. (dissenting). At the time of her injury on August 24, 1961, the plaintiff was four to four and one-half months pregnant. When she was thrown from the motorcycle, she suffered multiple contusions and abrasions and injuries to her shoulder and back. The principal injury, however, was to her left leg. She received fractures to both the tibia and fibula in the lower leg. She also had a fracture at the ankle joint, which was twisted. In the hospital, an orthopedic surgeon performed two reductions of the fractures, one about five days after the other. The bones were manipulated into place, and a cast was applied which extended from her toes to the groin. She was in the hospital for a period of eleven days. On November 24, three months after the accident, x rays showed sufficient healing to permit removal of the cast, but she was not permitted to bear weight on the injured leg. Pursuant to the instructions of her physician, she

continued to use crutches until February, 1962. Fifteen months after the accident, x rays showed good healing of the fractures, but there was still present some osteoporosis, which is a thinning of the bone. She was last seen by her physician on February 27, 1963, at which time she had reached maximum improvement. She has a 10 percent permanent disability of her lower left leg. The ankle is deformed, and this too is permanent. As a result of the permanent injury, she will continue to have some swelling and discomfort in her leg, especially if she puts too much strain on it by heavy housework or standing or walking for long periods of time. It should be noted in passing that the plaintiff was examined by a physician on behalf of the defendants but that there is no medical testimony in the record to contradict the evidence offered by the plaintiff's expert. She was twenty-five years old at the time of trial and had a life expectancy of 51.6 years.

The plaintiff had hospital and medical bills totaling $756.65. Although it is true that because of her pregnancy the plaintiff could expect to work for no longer than two additional months prior to the birth of her child, she suffered a loss of earning capacity for that period of time amounting to at least $360. Her total special damages were therefore in excess of $1100. " 'In passing upon a motion to set aside a verdict, the trial judge must do just what every juror ought to do in arriving at a verdict. The juror must use all his experience, his knowledge of human nature, his knowledge of human events, past and present, his knowledge of the motives which influence and control human action, and test the evidence in the case according to such knowledge and render his verdict accordingly. . . . The trial

judge in considering the verdict must do the same . . . and if, in the exercise of all his knowledge from this source, he finds the verdict to be so clearly against the weight of the evidence in the case as to indicate that the jury did not correctly apply the law to the facts in evidence in the case, or were governed by ignorance, prejudice, corruption or partiality, then it is his duty to set aside that verdict and to grant a new trial.' . . . [*Howe* v. *Raymond,* 74 Conn. 68, 71, 49 A. 854]; *Cables* v. *Bristol Water Co.,* 86 Conn. 223, 224, 84 A. 928; *Capital Traction Co.* v. *Hof,* 174 U.S. 1, 13, 19 S. Ct. 580, 43 L. Ed. 873; see *Bissell* v. *Dickerson,* 64 Conn. 61, 29 A. 226. The trial judge has a broad legal discretion and his action will not be disturbed unless there is a clear abuse. *Allen* v. *Giuliano,* 144 Conn. 573, 578, 135 A.2d 904; *Slabinski* v. *Dix,* 138 Conn. 625, 628, 88 A.2d 115; *Brower* v. *Perkins,* 135 Conn. 675, 681, 68 A.2d 146; *Roma* v. *Thames River Specialties Co.,* 90 Conn. 18, 20, 96 A. 169; *Loomis* v. *Perkins,* 70 Conn. 444, 447, 39 A. 797; Maltbie, Conn. App. Proc., §§ 187, 196." *Butler* v. *Steck,* 146 Conn. 114, 116, 148 A.2d 246. The trial court in its memorandum of decision on the motion to set aside the verdict expressed its belief that the jury failed to understand the law applicable to damages or were influenced by improper considerations. The ruling of the trial court on the motion to set aside the verdict is entitled to great weight. *Lupak* v. *Karalekas,* 147 Conn. 432, 433, 162 A.2d 180. In my opinion, the evidence does not demonstrate the clear abuse of discretion which would warrant a reversal of the action of the trial court in setting aside the verdict as inadequate.